JIMMY·RAY SUTTON v. MARVIN DUKE, KINSTON FERTILIZER COMPANY, AND SEABOARD COAST LINE RAILROAD COMPANY

No. 40

(Filed 28 August 1970)

1. Pleadings § 19; Rules of Civil Procedure § 12— abolishment of demurrer — failure to state a claim — motion to dismiss

The demurrer has been abolished by Rule 7(c) of the new Rules of Civil Procedure; when, however, a pleader has failed "to state a claim upon which relief can be granted," his adversary is now permitted by Rule 12(b)(6) to assert that defense either in a responsive pleading or by motion to dismiss.

2. Pleadings § 26; Rules of Civil Procedure § 12— demurrer under former statute — treatment as motion to dismiss

A demurrer interposed under [former] G.S. 1-127(6) on the ground that the alleged acts and omissions of defendants, if they constituted negligence, were not a proximate cause of plaintiff's injuries will be treated as a motion to dismiss under Rule 12 (b)(6) in this appeal heard after the effective date of the new Rules of Civil Procedure.

3. Rules of Civil Procedure § 8— adoption of "notice pleading"

By repealing G.S. 1-122, which required a complaint to state "the facts constituting a cause of action," and substituting in lieu thereof the requirement of Rule 8(a)(1) that a "claim for relief" shall be stated with sufficient particularity to give *notice* of the events intended to be proved showing that the pleader is entitled to relief, the legislature intended to relax somewhat the strict requirements of detailed fact pleading and to adopt the concept of "notice pleading."

4. Rules of Civil Procedure § 8— specificity of complaint — corresponding federal rule

North Carolina Rule of Civil Procedure 8(a)(1) requires the complaint to contain a more specific statement, or notice in more detail, than that required by corresponding Federal Rule 8(a)(2).

5. Rules of Civil Procedure §§ 8, 86— sufficiency of pleadings — federal and New York decisions

While the variant language in the North Carolina, New York and federal rules as to pleadings prevents the assumption that the legislature adopted Rule 8(a)(1) with the judicial construction which had been placed upon either the New York or the federal counterpart, since the federal and New York rules are the source of the North Carolina Rules the Supreme Court will look to the decisions of those jurisdictions for guidance in developing the philosophy of the new rules.

6. Rules of Civil Procedure § 8— notice theory of pleading — sufficiency of complaint

Under the "notice theory of pleading" a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable

Sutton v. Duke

the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought.

7. **Rules of Civil Procedure § 12— motion to dismiss — motion for more definite statement**

Mere vagueness or lack of detail is not ground for a motion to dismiss, but such a deficiency should be attacked by a motion for a more definite statement.

8. **Rules of Civil Procedure § 8— dismissal for failure to state a claim**

A complaint should not be dismissed for failure to state a claim unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claim.

9. **Rules of Civil Procedure § 8— dismissal of complaint — disclosure of affirmative defense or facts denying right to relief**

If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed.

10. **Rules of Civil Procedure § 8— sufficiency of complaint — Rule 8 (a)(1)**

Under the "notice theory" of pleading contemplated by Rule 8(a)(1), detailed fact-pleading is no longer necessary, and a pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and — by using the rules provided for obtaining pretrial discovery — to get any additional information he may need to prepare for trial.

11. **Rules of Civil Procedure § 12— motion to dismiss — when allowed**

The motion to dismiss, while performing the function of the demurrer under the former practice, will only be allowed when, under the former practice, a demurrer would have been sustained because the complaint affirmatively disclosed that plaintiff had no cause of action against the defendant.

12. **Rules of Civil Procedure § 12— motion to dismiss — statement of defective claim vs. defective statement**

The motion to dismiss under Rule 12(b)(6) may be successfully interposed to a complaint which states a defective claim or cause of action but not to one which was formerly labeled a "defective statement of a good cause of action."

13. **Animals § 3— failure to close gate to pony enclosure — foreseeable consequences**

One who fails to close the gate which provides ingress and egress to an enclosure in which he knows a pony is kept can reasonably anticipate that it will escape and run at large and can reasonably foresee the probability that the animal will go upon a nearby highway and cause injury to travelers and vehicles thereon.

**14. Negligence § 8— proximate cause**

In this jurisdiction, to warrant a finding that negligence, not amounting to a wilful or wanton wrong, was a proximate cause of an injury, it must appear that the tort-feasor should have reasonably foreseen that injurious consequences were likely to follow from his negligent conduct.

**15. Negligence § 9— proximate cause — foreseeability**

It is not necessary that a defendant anticipate the particular consequences which ultimately result from his negligence, it being required only that a person of ordinary prudence could have reasonably foreseen that such a result, or some similar injurious result, was probable under the facts as they existed.

**16. Animals § 3; Rules of Civil Procedure § 8— pony roaming at large — escape by mules from enclosure — collision by motorist with mule — sufficiency of complaint under new Rules of Civil Procedure**

Allegations that defendants negligently left open the gate to an enclosure wherein a pony was customarily retained, enabling the pony to escape and run at large, that the pony went some 500 yards to a lot where some mules were enclosed, that the mules became so excited by the pony outside their enclosure that they broke out, and that one of the mules wandered onto the highway three-fourths of a mile away and caused the collision in which plantiff was injured, *held* sufficient to withstand defendants' motion to dismiss pursuant to Rule of Civil Procedure 12(b)(6), notwithstanding on the basis of the facts alleged it would seem that the "mule delivery" was a consequence of the pony's escape which could not reasonably have been foreseen, since it cannot be said on the basis of the pleadings alone that plaintiff cannot prove otherwise or that he can prove no facts which would entitle him to recover from defendants, or some of them, for the damages resulting from the collision.

ON *certiorari* to review the decision of the Court of Appeals reported in 7 N.C. App. 100.

At the October 1969 Session of Greene, defendants demurred to plaintiff's complaint (filed 27 June 1969) upon the ground that it failed to state a cause of action. Hubbard, J., sustained the demurrers and dismissed the action. In an opinion filed 31 December 1969 the Court of Appeals reversed; upon defendants' petition we allowed certiorari.

In summary the complaint alleges: About 9:20 p.m. on 22 April 1967 plaintiff's automobile, which he was operating at 50 MPH on Rural Paved Road 1745 in Greene County, collided with a mule which belonged to W. I. Herring. The mule was at large in consequence of the following series of events. Defendant Marvin Duke, the president of defendant Kinston Fertilizer

Company, owned a white pony. On 22 April 1967, and for some-time prior thereto, the pony was kept about 100 feet from Road No. 1745 within a one-acre enclosure on the premises of defendant Fertilizer Company. Inside the fenced area were storage and other facilities used by Fertilizer Company for business purposes. The tracks of defendant Seaboard Coast Line Railroad ran beside the enclosure, and a spur track extended into the stockade through a gate. From time to time defendant Railroad delivered fertilizer and other supplies over the spur track to Fertilizer Company's storehouse in the enclosure.

All defendants and their agents knew that the pony was kept within the fenced area and that it would likely run at large if the gate was left open. On 22 April 1967 defendant Railroad delivered a carload of materials and supplies to Fertilizer Company, and "the defendants jointly and severally through their respective servants and agents and the said Marvin Duke, individually, said agents and servants then and there acting within the scope of and pursuant to their employment, did negligently and carelessly and unlawfully leave the gate to the enclosure wherein said pony was customarily retained, open, enabling said pony to escape and run at large."

On the opposite side of Road No. 1745, about 500 yards from the enclosure where the white pony was kept, Mr. Herring maintained an enclosure in which he kept four mules. Just before 8:00 p.m. on 22 April 1967, the pony, which was "being negligently permitted to run at large," came to the vicinity of the mule lot. There the pony "did agitate, excite, and attract said mules . . . in such a way that the said mules were caused to break down and break out of the Herring enclosure." There-after three of the mules ran at large, and plaintiff struck one of them at a point about three-fourths of a mile from the place where the animals were customarily retained and about 300 feet south of the intersection of N. C. Highway No. 91 with Rural Paved Road No. 1745. Plaintiff, traveling north, met and passed an automobile with its headlights burning. As the two cars came abreast, plaintiff saw a mule standing in his lane of traffic. Despite his efforts to avoid striking the mule, he collided with it. The collision wrecked his car and caused him serious and permanent personal injuries. He was damaged in the sum of $150,000.00.

Defendants demurred to the complaint upon the ground that their alleged acts and omissions, if they constituted negligence, were not a proximate cause of plaintiff's injuries.

*Lewis and Rouse for plaintiff appellant.*

*Barden, Stith, McCotter & Sugg and Aycock, LaRoque, Allen, Cheek & Hines for Marvin Duke and Kinston Fertilizer Company, defendant appellants.*

*Spruill, Trotter & Lane by John R. Jolly, Jr., for Seaboard Coast Line Railroad Company, defendant appellant.*

SHARP, J.

[1] The demurrer in this case was interposed under G.S. 1-127(6). This section was repealed by N. C. Sess. L. ch. 954, § 4 (1967), which enacted the new North Carolina Rules of Civil Procedure (NCRCP). These rules became effective 1 January 1970 and were made applicable "to actions and proceedings pending on that date as well as to actions and proceedings commenced on and after that date." N.C. Sess. L. ch. 803 (1969). The decision of the Court of Appeals, which reversed the trial court's judgment sustaining the demurrer and dismissing the action, was filed 31 December 1969. Thus, this appeal was caught *in limine* by Rule 7(c) which says, "Demurrers, pleas and exceptions for insufficiency shall not be used."

When, however, a pleader has failed "to state a claim upon which relief can be granted," his adversary is now permitted by Rule 12(b)(6) to assert that defense either in a responsive pleading or by motion to dismiss.

N.C.R. Civ. P. 12(b) is essentially a verbatim copy of Rule 12(b) of the Federal Rules of Civil Procedure (FRCP). In 2A Moore's Federal Practice § 12.08 (2d ed. 1968) (hereinafter referred to as Moore) it is said: "The motion to dismiss under Rule 12(b)(6) performs substantially the same function as the old common law general demurrer. A motion to dismiss is the usual and proper method of testing the legal sufficiency of the complaint. For the purpose of the motion, the well-pleaded material allegations of the complaint are taken as admitted; but conclusions of law or unwarranted deductions of fact are not admitted." The question as to what should be done with demurrers arose immediately after the federal rules went into effect, and the cases dealing with the problem generally treated the

demurrer as a motion to dismiss under Federal Rule 12(b) (6).
2 Moore § 7.06. "A motion to dismiss 'for failure to state a claim
upon which relief can be granted' is the modern equivalent of a
demurrer. Rule 12(b), Federal Rules of Civil Procedure as
amended and the Note thereto." *United Transport Serv. v.
National Mediation Board,* 179 F. 2d 446 (D.C. Cir. 1948).

[2]   Accordingly we treat the demurrer in this case as a motion
to dismiss under our Rule 12(b) (6) and consider whether plain-
tiff has stated in his complaint "a claim upon which relief can
be granted." Our general directive is Rule 8(a) (1), which re-
quires that any "pleading which sets forth a claim for relief . . .
shall contain (1) A short and plain statement of the claim
*sufficiently particular to give the court and the parties notice of
the transactions, occurrences, or series of transactions or occur-
rences, intended to be proved* showing that the pleader is entitled
to relief, and (2) A demand for judgment for the relief to which
he deems himself entitled. . . ." (Emphasis added) This rule
replaces G.S. 1-122 (repealed 1 January 1970), which provided
that "the complaint must contain . . . a plain and concise state-
ment of the facts constituting a cause of action. . . ."

The North Carolina Rules of Civil Procedure are modeled
after the federal rules. 48 N.C.L. Rev. 636 (1970). In most
instances they are verbatim copies with the same enumerations.
Sizemore, 5 Wake Forest Intra. L. Rev. 1 (1969). However, our
Rule 8(a) (1) differs from corresponding Federal Rule 8(a) (2)
in that the latter requires only "a short and plain statement of
the claim showing that the pleader is entitled to relief." To the
federal rule the legislature added the italicized portion of the
preceding quotation of our Rule 8(a), and those words constitute
the difference in the two rules. There are also material differ-
ences between illustrative Federal Forms 9 and 10 and North
Carolina illustrative Forms 3 and 4. These forms each state a
claim for damages for personal injuries resulting from a
collision between an automobile and a pedestrian. North Carolina
Forms 3 and 4 contain allegations of the specific acts constituting
defendant's negligence. Federal Forms 9 and 10 contain no such
specificity; they merely allege that at a designated time and
place "defendant negligently drove a motor vehicle against
plaintiff who was then crossing said highway." N.C.R. Civ. P. 84
declares that Forms 3 and 4 and all the other forms of complaint
incorporated therein are "sufficient under these rules and are

intended to indicate the simplicity and brevity of statement which the rules contemplate." This language is identical to that of Federal Rule 84.

The italicized portion of our Rule 8(a)(1) (not included in Federal Rule 8 (a)(2)) was probably taken from the New York's Civil Practice Law and Rules § 3013 (CPLR) (McKinney's Consolidated Laws of N. Y., Book 7B § 3013). *See* 48 N.C.L. Rev. 636, 638, n. 15. Section 3013 says: "Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences intended to be proved and *the material elements of each cause of action or defense.*" (Italics ours.) The preceding words in italics were omitted from our Rule 8(a)(1) and constitute the difference between it and New York Rule 3013.

[3, 4] By repealing G.S. 1-122, which required a complaint to state "the facts constituting a cause of action," and substituting in lieu thereof the requirement that a "claim for relief" shall be stated with sufficient particularity to give *notice* of the events intended to be proved showing that the pleader is entitled to relief, the legislature obviously intended to change our prior law. We do not assume its choice of "new semantics" was either accidental or casual. Considering the inspiration, origin, and legislative history of the NCRCP and the absence from it of the words "facts" and the phrase "facts constituting a cause of action" we conclude that the legislature intended to relax somewhat the strict requirements of detailed *fact* pleading and to adopt the concept of "notice pleading." However, the additional requirements in our Rule 8(a)(1) manifest the legislative intent to require a more specific statement, or notice in more detail, than Federal Rule 8(a)(2) requires.

In 5 Wake Forest Intra. L. Rev. 1, 15, Professor James E. Sizemore says that "[t]he North Carolina requirement was the result of compromise between the drafting committee and practicing lawyers on the General Statutes Commission who wanted more specificity, especially in automobile cases, than Federal Form 9 requires. The result is that under the directive of our Rule 8(a)(1) a complaint need not be as specific as under the former practice, but it must be "to some degree more specific than the federal complaint. The added degree of specificity is

not readily determinable from the language of the rule itself."
48 N.C.L. Rev. 636, 637.

As previously noted, the only appreciable difference between
our Rule 8(a)(1) and New York's CPLR § 3013 is the latter's
additional requirement that the statement of claim shall also
give notice of "the material elements of each cause of action or
defense." The addition provides no basis for an argument that
our rule requires *greater* specificity in pleading than CPLR §
3013. 48 N.C.L. Rev. 636, 639. No doubt the draftsmen omitted
the "material elements" requirement from our rule in an effort
to discourage a judicial construction of Rule 8(a)(1) which
would retain the former rule that the cause of action consists of
*facts* alleged. *Skipper v. Cheatham,* 249 N.C. 706, 709, 107 S.E.
2d 625, 628. In contrast to § 3013 neither the North Carolina
nor federal rules incorporate the phrase "cause of action."
However, in the manner of their use, we can perceive no
substantial difference in the meaning of "cause of action" and
"claim for relief." We agree with Siegel, the author of Practice
Commentary, CPLR, § 3013 that "the use of the 'claim for relief'
phrase in the federal rules was not a rejection of 'cause of
action' as such," but rather a rejection of pleading technicalities
identified with "cause of action" (technicalities such as "evi-
dence" *or* "ultimate facts," "conclusions" *or* "facts sufficient
to constitute a cause of action"). N.Y. Civ. Prac. Law § 3013
(McKinney, 1969-70 Supplement, Book 7B).

[5]    The variant language in the North Carolina, New York,
and federal rules prevents the assumption that the legislature
adopted our Rule 8(a)(1) with the judicial construction which
had been placed upon either the New York or the federal
counterpart. All changes in words and phrasing in a statute
adopted from another state or country will be presumed delib-
erately made with the purpose to limit, qualify, or enlarge the
adopted rule. 82 C.J.S. *Statutes* § 371, (1953). This is not to say,
however, that the "sizable body of case law" which the FRCP
and New York's CPLR have produced should be ignored. On the
contrary, since the federal and, presumably, the New York rules
are the source of NCRCP, we will look to the decisions of those
jurisdictions for enlightenment and guidance as we develop "the
philosophy of the new rules."

The attempts of the federal court to state the scope and
philosophy of their rules was summarized by Mr. Justice

Black in *Conley v. Gibson,* 355 U.S. 41, 2 L. Ed. 2d 80, 78, S. Ct. 99, the case most frequently cited and quoted on the point we consider here. Speaking for a unanimous Court, he said: ". . . [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." *Id.* at 47-48. Thus, under the federal rules "a case consists not in the pleadings, but in the evidence, for which the pleadings furnish the basis." *DeLoach v. Crowley, Inc.,* 128 F. 2d 378 (5th Cir. 1941).

[6, 7]   Under the "notice theory of pleading" a statement of claim is adequate if it gives sufficient notice of the claim asserted "to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought. . . ." Moore § 8.13. "Mere vagueness or lack of detail is not ground for a motion to dismiss." Such a deficiency "should be attacked by a motion for a more definite statement." Moore § 12.08 and cases cited therein.

[8, 9]   In further appraising the sufficiency of a complaint Mr. Justice Black said, in *Conley v. Gibson, supra* at 45-46, "[W]e follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." "This rule," said the Court in *American Dairy Queen Corporation v. Augustyn,* 278 F. Supp. 717, "generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery." If the complaint discloses an unconditional affirmative defense which defeats the claim asserted or pleads facts which deny the right to any relief on the alleged claim it will be dismissed. Moore § 12.08 summarizes the federal decisions as follows: " 'A [complaint] may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a

claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.' But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*"

Since the sufficiency of a statement will vary with the circumstances of each case, generalizations by the court are of little more help to a pleader than the rules themselves. As usual, enlightenment comes from observing and understanding what the courts do. The following cases are illustrative of the circumstances in which the federal courts have allowed the motion to dismiss: *Day v. Walker*, 206 F. Supp. 32 (W.D.N.C. 1962) (complaint revealed action barred by statute of limitations); *Wallingford v. Zenith Radio Corp.*, 310 F. 2d 693 (7th Cir. 1962) (absolute privilege in defamation); *Leggett v. Montgomery Ward & Co.*, 178 F. 2d 436 (10th Cir. 1949) (probable cause shown in malicious prosecution complaint); *Tenopir v. State Farm Mut. Co.*, 403 F. 2d 533 (9th Cir. 1968) (insurance policy attached to complaint showed noncoverage); *L. Singer & Sons v. Union Pac. R. Co.*, 109 F. 2d 493 (8th Cir. 1940) (plaintiff without capacity to maintain the suit); *Case v. State Farm Mut. Auto. Ins. Co.*, 294 F. 2d 676 (5th Cir. 1961) (in action for wrongful termination, attached contract showed absolute right to terminate). Compare *Shull v. Pilot Life Insurance Company* (5th Cir. 1963) 313 F. 2d 445 (motion to dismiss denied and a dismissal with prejudice on the "basis of bare bones pleading" is called "a tortious thing").

The New York CPLR became effective *1 September 1963.* Very soon thereafter it was held that § 3013 had eliminated the old requirement that a pleading *state* "material facts." In *Hewitt v. Maass*, 246 N.Y.S. 2d 670, 41 Misc. 2d 894 (1964), it was said: "Now, if *notice,* or literally *comprehension* can be had from a pleading the method of attaining the communicable pattern becomes secondary." *Id.* at 672. The decision in *Foley v. D'Agostino*, 248 N.Y.S. 2d 121 (1964), which immediately followed *Hewitt* "has become the standard of measuring sufficiency of pleadings in New York." 48 N.C.L. Rev. 636, 640. From these and subsequent decisions we conclude that under New York's CPLR (1) the primary function of pleadings now is to apprise the court and parties of the subject matter of the controversy

and the theory of recovery with sufficient precision to enable the court to control the case and the opponent to prepare; (2) by the elimination of the former requirement of § 241 of the Civil Practice Act that pleadings state material facts it was intended "that the considerable judicial effort formerly expended in distinguishing 'evidence' or 'conclusion' from 'fact' be directed to more useful purposes . . . but it is clear that, under CPLR, the statements in pleadings are still required to be factual, that is, the essential facts required to give 'notice' must be stated." *Foley v. D'Agostino, supra* at 125; (3) if a statement is so vague or ambiguous that a party cannot reasonably be required to frame a response he may move for a more definite statement; (4) if irregularity, defect, or omission represents an inherent deficiency which the adverse party knows will bar the pleader's right to recover or defend, the adverse party should proceed by way of a motion for summary judgment with supporting affidavits and thus secure an immediate determination on the merits; and (5) "[m]otions to dismiss should not be granted unless it is very clear that there can be no relief under any of the facts alleged in the pleading for the relief requested or for other relief." *Richardson v. Coy,* 280 N.Y.S. 2d 623, 624.

[10] The difference in the degree of specificity required by the NCRCP, CPLR, and the Federal Rules cannot be formularized. It is best realized by a comparison of the various forms of complaint illustrating the respective rules. Compare N. C. Forms 3 and 4 with Federal Forms 9 and 10. Under the "notice theory" of pleading contemplated by Rule 8(a)(1), detailed fact-pleading is no longer required. A pleading complies with the rule if it gives sufficient notice of the events or transactions which produced the claim to enable the adverse party to understand the nature of it and the basis for it, to file a responsive pleading, and—by using the rules provided for obtaining pretrial discovery—to get any additional information he may need to prepare for trial.

As pointed out in *Shull v. Pilot Life Insurance Company,* 313 F. 2d 445 (5th Cir. 1963), the notice theory of pleading does not necessarily mean that there must be a full-blown trial. Utilizing the "facility of pretrial discovery, the real facts can be ascertained and by motion for summary judgment (or other suitable device) the trial court can determine whether as a matter of law there is any right of recovery on those facts." *Id.* at 447.

However, notwithstanding the new liberality, the warning of Myers and Humphreys, stated in 5 Wake Forest Intra. L. Rev. 70, 73, should not be ignored: "As the pleadings retain the traditional objects of formulating issues and giving notice, the claim for relief and the basis for defense must still satisfy the requirements of the substantive law which give rise to the pleadings, and no amount of liberalization should seduce the pleader into failing to state enough to give the substantive elements of his claim or of his defense."

At this juncture we call attention to the Comment of Professor Sizemore in his article, General Scope and Philosophy of the New Rules, 5 Wake Forest Intra, L. Rev. 1, 15: "[T]here is nothing in the rules to prevent detailed pleading if the pleader deems it desirable. . . . He may plead enough facts to prevent the invocation of discovery devices or the use of motions for more definite statement. Such a complaint could clearly identify the issues since Rule 10(b) requires the claim or claims to be averred in numbered paragraphs. In other words, there is nothing to prevent skillful and candid pleaders from meeting head on in the pleadings." *Id.* at 15.

To the same effect is Comment (a)(3) upon N.C.R. Civ. P. 8(a) in N.C. Gen. Stats. Vol. 1-A at p. 599: "By specifically requiring a degree of particularity the Commission sought to put at rest any notion that the mere assertion of a grievance will be sufficient under these rules. . . . The Commission's prescription suggests that not only is it permissible under these rules for a pleader to so plead as to obviate the need for a pre-trial conference or resort to the discovery procedures but that it will frequently be his duty to do so."

The substance of the preceding observations was also stated by Dean Dickson Phillips in his comments upon § 970.35 in the 1970 Pocket Supplement to McIntosh, N. C. Practice and Procedure (2d ed.): "Under this approach (notice pleading) the means are of course still left to pleaders to give such notice of legal and factual theories and so adequately to isolate issues that trial may be had in a given case on the basis of the unsupervised pleading exchange alone. But it is not intended that when this does not transpire, any time should ordinarily be spent in attempting to force the pleadings into this condition."

[11]   At the beginning of this opinion we noted that the

motion to dismiss, which tested "the legal sufficiency of the complaint," performed a function of the demurrer under the former practice. The motion to dismiss, however, will be allowed *only* when, under the former practice, a demurrer would have been sustained because the complaint affirmatively disclosed that the plaintiff had no cause of action against the defendant. *Bagwell v. Brevard*, 256 N.C. 465, 124 S.E. 2d 129; *Gillikin v. Springle*, 254 N.C. 240, 118 S.E. 2d 611; *Turner v. Board of Education*, 250 N.C. 456, 109 S.E. 2d 211. If the complaint disclosed "a defective cause of action" no amendment could supply the deficiency, and the action was dismissed. *Skipper v. Cheatham, supra; Bailey v. McGill*, 247 N.C. 286, 100 S.E. 2d 860. If, on the contrary, the complaint contained "a defective statement of a good cause of action," that is, if it was deficient in factual allegations which presumably could be supplied, the demurrer was sustained but plaintiff was allowed to amend. *Murray v. Aircraft Corporation*, 259 N.C. 638, 131 S.E. 2d 367.

[12] When Rule 7(c) abolished demurrers and decreed that pleas "for insufficiency shall not be used," it also abolished the concept of "a defective statement of a good cause of action." Thus, generally speaking, the motion to dismiss under Rule 12(b)(6) may be successfully interposed to a complaint which states a defective claim or cause of action but not to one which was formerly labeled a "defective statement of a good cause of action." For such complaint, as we have already noted, other provisions of Rule 12, the rules governing discovery, and the motion for summary judgment provide procedures adequate to supply information not furnished by the complaint. *See* the paper delivered by Dean Dickson Phillips, *The Sufficiency of a Pleading as Tested by the Motion to Dismiss for Failure to State a Claim upon Which Relief Can be Granted*, reported in the proceedings at the North Carolina Bar Association's Institute on the New Rules of Civil Procedure, October 1968, VI 16-19. *See also* Comment upon Rule 12, Vol. 1A, N.C. Gen. Stats., § 1A-1, p. 610.

[13] We come now to the specific question in the instant case, do the facts alleged absolutely absolve defendants of legal responsibility for plaintiff's collision with the Herring mule? Had the pony suddenly appeared on the highway in front of plaintiff's automobile, it is clear that all those whose negligence was responsible for permitting it to escape would be liable to plaintiff for

the injuries resulting from his collision with it. One who fails to close the gate which provides ingress and egress to an enclosure in which he knows a pony is kept can reasonably anticipate that it will escape and run at large. He can also reasonably foresee the probability that the animal will go upon a nearby highway and cause injury to travelers and vehicles thereon. *Wells v. Johnson*, 269 N.C. 622, 153 S.E. 2d 2; *Shaw v. Joyce*, 249 N.C. 415, 106 S.E. 2d 459. However, it was not the pony with which plaintiff collided; it was a mule which—along with three others—became so excited by the presence of the pony at large outside the mule enclosure that it broke out, wandered onto the highway three-fourths of a mile away, and caused the collision in which plaintiff was injured.

On the facts alleged, we can assume that "but for" defendants' negligence in permitting the pony to escape the mules would not have broken out and that plaintiff would not have collided with one of them. The question remains, however, whether defendants' negligence was a proximate, or legal, cause of the collision, that is, whether the law extends their responsibility to such a consequence.

[14, 15] In this jurisdiction, to warrant a finding that negligence, not amounting to a wilful or wanton wrong, was a proximate cause of an injury, it must appear that the tort-feasor should have reasonably foreseen that injurious consequences were likely to follow from his negligent conduct. *Ratliff v. Power Co.*, 268 N.C. 605, 151 S.E. 2d 641; *Shepard v. Manufacturing Co.*, 251 N.C. 751, 112 S.E. 2d 380; *Hayes v. Wilmington*, 243 N.C. 525, 91 S.E. 2d 673; *Hall v. Coble Dairies*, 234 N.C. 206, 67 S.E. 2d 63. It is not necessary that a defendant anticipate the particular consequences which ultimately result from his negligence. It is required only "that a person of ordinary prudence could have reasonably foreseen that such a result, *or some similar injurious result,* was probable under the facts as they existed." (Italics ours) *Adams v. Board of Education,* 248 N.C. 506, 103 S.E. 2d 854; 3 Strong, N. C. Index *Negligence* § 7 (1960). However, we have also said that a defendant is liable for the consequences of his negligence if he "might have foreseen that some injury would result from his act or omission or that *consequences of a generally injurious nature* might have been expected." (Emphasis added) *Williams v. Boulerice,* 268 N.C. 62, 149 S.E. 2d 590; *Insurance Co. v. Gas Co.,* 247 N.C. 471, 101

S.E. 2d 389. Some of our decisions are difficult to reconcile. See the comments in 39 N.C.L. Rev. 323, 395 (1961) and 37 N.C.L. Rev. 371, 459. Compare *Insurance Co. v. Gas Co., supra; Hall v. Coble Dairies, supra;* and *Ramsey v. Power Co.,* 195 N.C. 788, 143 S.E. 861, with *Roberson v. Taxi Service, Inc.,* 214 N.C. 624, 200 S.E. 363; *Ellis v. Refining Co.,* 214 N.C. 388, 199 S.E. 403; and *Davis v. Light Co.,* 238 N.C. 106, 76 S.E. 2d 378.

Definitions and general statements made with reference to specific situations are of little help in those cases in which the defendant's negligence is followed, not by reasonably foreseeable consequences but by events which, prima facie, he could not have anticipated. Prosser, in his Law of Torts § 50 (3d Ed. 1964) at p. 288, says: " 'Proximate cause' cannot be reduced to absolute rules. No better statement ever has been made concerning the problem than that of Street: 'It is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent. . . .' " The policy argument over whether the loss should be borne by an innocent plaintiff or a defendant whose negligence caused harmful events not reasonably foreseeable will continue. However, since it is "inconceivable that any defendant should be held liable to infinity for all the consequences which flow from his act," some boundary must be set. *Id.* at p. 303. The concept of the foreseeable risk, especially in cases involving an intervening cause, seems to offer the most elastic and practical solution. *See* Prosser at pp. 306, 310-311. *See also* Morris, 34 Minn. L. Rev. 185 (1950).

[16] On the basis of the facts which plaintiff has alleged it would seem that the "mule delivery" was a consequence of the pony's escape which could not reasonably have been foreseen. However, we cannot say on the basis of the "bare bones pleadings" that plaintiff cannot prove otherwise, or that he can prove no facts which would entitle him to recover from defendants (or some of them) for the damages resulting from the collision. To dismiss the action now would be "to go too fast too soon." *Barber v. Motor Vessel "Blue Cat,"* 372 F. 2d 626, 629 (5th Cir. 1967). This case is not yet ripe for a determination that there can be no liability as a matter of law. *See Shull v. Pilot Life Insurance Co., supra. Inter alia,* these questions arise: Had the pony ever escaped and agitated the Herring mules prior to 22 April 1967? If so, did defendants, or any of them,

Sutton v. Duke

know of the incident? Did defendants have any reason to believe that the Herring fence was inadequate to confine the mules? Had the mules, to the knowledge of defendants, ever escaped before?

We hold that the face of the complaint shows no insurmountable bar to recovery on the claim alleged and that it gives defendants sufficient notice of the nature and basis of plaintiff's claim to enable them to answer and to prepare for trial. Indeed, defendants Duke and Fertilizer Company have not only filed answers; each has filed a third-party complaint against W. I. Herring. By utilizing the discovery rules defendants may ascertain more precisely the details of plaintiff's claim and whether he can prove facts which will entitle him to have a jury decide the merits of his claim.

Affirmed.