PERRY E. PIATT v. KRISPY KREME DOUGHNUT CORPORATION

No. 7521SC473

(Filed 17 December 1975)

Contracts § 3— "Rough Draft" — enforceable contract

> A paper writing labeled "Rough Draft" was not unenforceable as a contract as a matter of law where plaintiff alleged that the "Rough Draft," which was submitted by plaintiff to defendant, was accepted by defendant as the contract between the parties.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 19 March 1975 in Superior Court, FORSYTH County. Heard in the Court of Appeals 23 September 1975.

This is an action for breach of contract. In pertinent part, plaintiff alleged the following:

> "2. The plaintiff, on or about April 11, 1973, submitted his resignation as Vice President, member of the Board of Directors, and employee of the defendant corporation in a letter addressed to Vernon C. Rudolph who was the principal shareholder, Chairman of the Board of Directors, and chief operating officer of the defendant corporation. A copy of this letter is attached hereto as Exhibit A.

> 3. Responding to the plaintiff's letter, the defendant, through Mr. Rudolph, requested the plaintiff to discuss the matter of his resignation. The plaintiff did discuss this matter with Mr. Rudolph on April 14, 1973, at which time, the defendant corporation, through Mr. Rudolph, requested the plaintiff to propose the terms of a contract which would satisfy the plaintiff. Pursuant to this request made by the defendant, the plaintiff prepared a 'rough draft' of the 'basic essentials' for a contract between him and the defendant. This 'rough draft' was delivered to Mr. Rudolph on April 27, 1973. A copy of this writing is attached hereto as Exhibit B.

> 4. After reviewing the terms of the plaintiff's rough draft of the basic essentials of a contract (Exhibit B)

between the plaintiff and the defendant, Mr. Rudolph contacted the plaintiff and informed the plaintiff that the defendant accepted all of the terms of Exhibit B.

5. On or about May 2, 1973, the defendant, acting through Mr. Rudolph, agreed with the plaintiff upon the amount of the fee referred to in paragraph 4 of Exhibit B. The plaintiff and the defendant agreed upon a fee of One Hundred Dollars ($100.00) per day. Mr. Rudolph then called the defendant's attorney, John Minor, who came promptly to the defendant's office and conferred with Mr. Rudolph and the plaintiff, together, they went over Exhibit B item by item. The defendant, through Mr. Rudolph, told Mr. Minor that the defendant agreed to these terms, and asked Mr. Minor to prepare a formal written document based thereon. Mr. Minor was supplied with a copy of Exhibit B on which he made some notes for the purpose of completing the details of the formal document. At the same time, and in the presence of Mr. Rudolph, the plaintiff informed Mr. Minor that he had agreed upon the terms of the contract contained in Exhibit B. Mr. Minor said that he would prepare the formal document.

6. Mr. Minor did work with both the plaintiff and with the defendant, through Mr. Rudolph, on the details of a formal document incorporating the terms of Exhibit B, but Mr. Rudolph died on August 16, 1973, before a formal document could be signed.

7. At all times mentioned herein, Mr. Vernon C. Rudolph was acting as the agent of the defendant and within the scope of his authority as principal shareholder, Chairman of the Board of Directors, and chief operating officer of the defendant.

8. Exhibit B attached hereto and the further agreements alleged in paragraph 5, above, constitute a valid and binding contract between the plaintiff and the defendant, based upon valid considerations. All of the substantial terms of the contract between the plaintiff and the defendant are contained therein. The details left to be worked out with Mr. Minor are not essential to the validity of said contract.

9. Following Mr. Rudolph's death, the defendant refused to honor the said contract and has breached the same by not performing any of its obligations thereunder.

10. The plaintiff stands ready, able and willing to perform all obligations imposed upon him under the contract between him and the defendant."

Exhibit B of the complaint is as follows:

"EXHIBIT B                                          April 27, 1973

ROUGH DRAFT

Basic essentials for contract between Krispy Kreme Doughnut Corporation and Perry Piatt.

PURPOSE

1. To allow Perry Piatt to semiretire without severing his employment with Krispy Kreme.

2. To further compensate Perry Piatt for past contributions to Krispy Kreme's success.

3. To make available to Krispy Kreme but to no competitor Perry Piatt's knowledge and experience gained while employed by Krispy Kreme.

TERMS AND CONDITIONS

1. Contract to be for ten years.

2. This contract would wipe out any past offers or promises made to Perry Piatt by Krispy Kreme.

3. Perry Piatt will not make his knowledge or experience available to anyone or in any way that would be competitive or detrimental to Krispy Kreme.

4. Perry Piatt will make his services available to Krispy Kreme on a consulting basis for a fee, but would not otherwise be required to report to work.

5. Krispy Kreme Doughnut Corporation will pay Perry Piatt or his survivors $25,000.00 per year.

6. Krispy Creme will furnish Perry Piatt a company car.

7. Perry Piatt will continue in the pension plan with his equity to be paid to him in a lump sum at the end of this contract or to his survivors at the time of his death, should he die before the expiration of this contract.

8. Perry Piatt will continue in the hospitalization and life insurance plans of Krispy Kreme as he now does for a period of the remainder of his life.

DETAILS TO BE WORKED OUT WITH JOHN MINOR."

Defendant moved for dismissal under Rule 12 and the motion was allowed.

*W. P. Sandridge and W. Andrew Copenhaver, for plaintiff appellant.*

*Ralph M. Stockton, Jr., J. Robert Elater and Steven E. Philo, for defendant appellee.*

VAUGHN, Judge.

A complaint should not be dismissed for failure to state a valid claim unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. Unless the face of the complaint shows an insurmountable bar to recovery, plaintiff's action should not be dismissed on the pleading. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161.

Defendant urges that, on its face the paper labeled "Rough Draft" was only a preliminary negotiating agreement and that the parties did not intend to be bound until the execution of a formal document. Defendant relies to a great extent on *Boyce v. McMahan,* 285 N.C. 730, 208 S.E. 2d 692. Although we do not necessarily agree that the document here, standing alone, "shows its incompleteness by emphasizing its preliminary character," *Boyce,* p. 734, plaintiff's case does not have to stand or fall on the face of that document. Here, plaintiff alleges that the "Rough Draft" he submitted was accepted by defendant as the contract between the parties. Broadly reading his pleadings, the document thereupon ceased to be a rough draft and became the contract between the parties. We hold that the Exhibit B, when read in the light of the remainder of the complaint, does not itself carry the terms that "destroy its efficiency as a contract." That being true, the question of whether the agreement is complete or partial must be left to inference or further proof. It cannot be said as a matter of law that the execution of a more formal agreement was a condition to any contractual right that might otherwise pertain. *Bank v. Wallens* and *Schaaf v. Longiotti,* 26 N.C. App. 580, or that the alleged agreement did

---

Brooks & Brooks, LTD. v. Water Conditioning

---

not contain all material and essential terms of the parties' agreement.

Able counsel for defendant attacks the complaint on many fronts. We have carefully considered all of their well reasoned arguments but conclude, nevertheless, that no insurmountable bar to some recovery appears on the face of the complaint and attached exhibits.

Other questions of law that might arise cannot be resolved until plaintiff has the opportunity to come forward with his proof.

The judgment dismissing the action is reversed.

Reversed.

Chief Judge BROCK and Judge MARTIN concur.