Sonic Auto., Inc. v. Mercedes-Benz USA, LLC, 2010 NCBC 10.

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 4259

SONIC AUTOMOTIVE, INC., )
)
                Plaintiff )
)
      v. )
)
)
)
)
MERCEDES-BENZ USA, LLC, )
)
              Defendant )

**ORDER ON PLAINTIFF'S
MOTION TO DISMISS
DEFENDANT'S COUNTERCLAIMS**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, by order of the Chief Special Superior Court Judge for Complex Business Cases, now comes before the court upon Plaintiff's Motion to Dismiss Third and Fourth Counterclaims (the "Motion"), pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, having considered the Plaintiff's Motion, briefs in support of and in opposition to the Motion and appropriate matters of record, CONCLUDES that the Motion should be DENIED, for the reasons stated herein.

I.

## PROCEDURAL BACKGROUND

[1]     This civil action was filed by Plaintiff on March 17, 2008.  As it currently is postured, the Complaint alleges eight Counts ("Claim(s)"):  Count I – Declaratory Judgment and Mandatory Injunction – MBUSA's Obligation to Approve Sonic's Acquisition of the Charlotte Dealership; Count II – Declaratory Judgment – Letter Agreement Invalid; Count III – Declaratory Judgment – Substantial Progress; Count IV – Unfair and Deceptive Trade Practices; Count V – Tortious Interference with Contract; Count VI – Tortious Interference with Prospective Economic Advantage; Count VII – Reformation – Mutual Mistake and Count VIII – Reformation – Unilateral Mistake.

[2]     In its First Amended Answer to the Complaint and Counterclaims (the "Amended Answer and Counterclaims"), filed on June 13, 2008, Defendant Mercedes-Benz USA, LLC ("MBUSA" or "Mercedes-Benz") alleges four Counterclaims ("Counterclaim(s)"):  First Counterclaim – Declaratory Judgment and Mandatory Injunction – Sonic's Obligation to Comply with the Letter Agreement; Second Counterclaim – Breach of Contract; Third Counterclaim – Promissory Estoppel and Fourth Counterclaim – Unfair and Deceptive Trade Practices (Defamation/Slander Per Se).

[3]     By way of its Motion, Plaintiff seeks dismissal of the Third and Fourth Counterclaims pursuant to Rule 12(b)(6).

II.

FACTS

Among other things, the Amended Answer and Counterclaims allege that:

[4]     On November 20, 1998, Plaintiff made certain promises in an agreement entered into between Defendant and Plaintiff (the "1998 Framework Agreement").[1]  As detailed in the 1998 Framework Agreement, Defendant has a policy limiting the number of Mercedes-Benz passenger car and light truck dealers that a single entity may own or control.[2]  Plaintiff promised to be bound by the terms of that policy.[3]

[5]     Exhibit A to the 1998 Framework Agreement expressly states:[4]

> In order for any entity to acquire additional Mercedes-Benz passenger car and light truck dealers within the limits of this Policy, each Dealer affiliated with such entity must be in full compliance with the terms of its Dealer Agreement, including the Corporate Identity Manual and all other manuals, bulletins, instructions and directives issued to Dealers by MBNA.

[6]     On January 1, 2002, Plaintiff signed a Dealer Agreement Improvement Addendum, with regard to correction of various deficiencies at its Mercedes-Benz dealership in Belmont, California.[5]  On December 6 and December 8, 2005, respectively, Plaintiff signed (a) a second Dealer Agreement Improvement Addendum promising to correct the ongoing deficiencies at the Belmont, California dealership and (b) another Dealer Agreement Improvement Addendum agreeing to make repairs at its Mercedes-Benz dealership in Walnut Creek, California.[6]

---

[1] Am. Ans. and Countcls., Ex. 15.
[2] *See id.* at 1, 9, ¶ 4.
[3] *Id.* at 7.
[4] *Id.* at 9, ¶ 4.
[5] Am. Ans. and Countcls., ¶ 79, citing Ex. 3, 1, "Belmont, CA" section.
[6] *Id.* at 1-2, "Belmont, CA" and "Walnut Creek, CA" sections, respectively.

[7]     On or about June 14, 2007, Plaintiff and Defendant entered into a letter agreement ("Letter Agreement"),[7] pursuant to which Plaintiff made specific promises to address certain deficiencies and to make certain renovations at five Mercedes-Benz dealerships owned by Plaintiff in California, Tennessee and Florida.  In exchange for these promises, Defendant granted approval for Plaintiff to purchase Calabasas Motorcars, Inc. d/b/a Mercedes-Benz of Calabasas, in Calabasas, California (the "Calabasas Dealership") after entry into the Letter Agreement.[8]

[8]     The Letter Agreement was heavily negotiated between Plaintiff and Defendant over a three-week span.[9]  Between May 25 and June 14, 2007, the parties exchanged at least seven different versions of the Letter Agreement.[10]  Plaintiff and Defendant negotiated the terms of the Letter Agreement via e-mail communications, exchanging redline versions of the Letter Agreement, and the parties had multiple telephone conferences to discuss Plaintiff's proposed changes.[11]  On June 5, 2007, multiple representatives of Plaintiff and Defendant, including Stephen K. Coss, Plaintiff's Senior Vice President and General Counsel, participated in a conference call to discuss additional revisions to the Letter Agreement.[12]  After the Letter Agreement was executed by both parties, Plaintiff requested yet another change in the Letter Agreement, to which Defendant agreed.[13]  The final version of the Letter Agreement was executed by the parties on June 14, 2008.[14]

---

[7] Am. Ans. and Countcls., Ex. 3.
[8] *Id.*
[9] *Id.*, ¶ 81.
[10] *Id.*, citing Exs. 5-11.
[11] *Id.*, ¶ 85.
[12] *Id.*
[13] *Id.*, ¶ 81.
[14] *Id.*, citing Ex. 12.

[9]     Defendant conceded to a number of revisions in the Letter Agreement that Plaintiff requested.[15]  For example, the following terms were specifically modified based on Plaintiff's request:[16]

> (a)     The Calabasas Dealership completion date was changed from June 30, 2009, to December 31, 2010, and then was changed yet again to December 31, 2012;
>
> (b)     The Walnut Creek completion date was changed from December 31, 2008, to April 1, 2009;
>
> (c)     The Daytona Beach completion date was changed from December 31, 2009, to December 31, 2011 and
>
> (d)     The definition of "Force Majeure Events" was expanded to include Plaintiff's recommendation concerning failure to obtain permits.

[10]     Defendant did not, however, concede on Plaintiff's request to change the last paragraph of the Letter Agreement.[17]  This paragraph contained Plaintiff's express promise that Defendant would not be required to approve the acquisition of any additional Mercedes-Benz dealerships until "substantial progress is realized in remedying the respective dealership deficiencies as noted herein."[18]  Specifically, Plaintiff requested that the language be changed to reflect that Defendant could withhold approval of Plaintiff's acquisition of any additional Mercedes-Benz dealerships if Plaintiff "is in breach of the terms of this Letter Agreement."[19]  Defendant rejected

---

[15] *Id.*, ¶ 82.
[16] *Id.*
[17] *Id.*, ¶ 83.
[18] *Cf.* Letter Agreement Version One, *id.*, Ex. 5, with Version Three, *id.*, Ex. 7.
[19] *See, e.g.* redline revisions to last paragraph of Letter Agreement Version Three, *id.*, Ex. 7.

Plaintiff's requested change, and the parties instead agreed to the language of this paragraph as originally drafted in Version One of the Letter Agreement.[20]

[11]    Defendant was the last party to sign the Letter Agreement, which was executed at Defendant's corporate headquarters in Montvale, New Jersey.[21]

[12]    To date, Plaintiff has not realized substantial progress in remedying the specific deficiencies identified in the Letter Agreement.[22]

[13]    Nonetheless, Plaintiff entered into an Asset Purchase Agreement in December 2007, under which Plaintiff agreed to purchase certain assets of the Beck Mercedes-Benz dealership ("Beck") in Charlotte, North Carolina.[23]

[14]    On or about February 12, 2008, Beck provided Defendant with written notice indicating that Beck had entered into an Asset Purchase Agreement with Plaintiff for the sale of Beck's assets.[24]

[15]    On February 15, 2008, Defendant sent a letter to Beck acknowledging receipt of Beck's February 12, 2008 letter regarding the Asset Purchase Agreement with Plaintiff.[25]

[16]    On February 20, 2008, Defendant sent a letter to Plaintiff in which it acknowledged receipt of the Asset Purchase Agreement between Plaintiff and Beck.[26] In this letter, Defendant informed Plaintiff that it was unable to review or approve a

---

[20] *See, e.g.,* Final Version Executed 6-14-07, *id.,* Ex. 12.
[21] *Id.,* ¶ 86.
[22] *Id.,* ¶ 89.
[23] *Id.,* ¶ 90.
[24] *Id.,* ¶ 91, citing Ex. 16.
[25] *Id.,* ¶ 92, citing Ex. 17.
[26] *Id.,* ¶ 93, citing Ex. 18.

dealer application from Plaintiff for the acquisition of Beck because Plaintiff had not yet complied with the terms of the Letter Agreement.[27]

[17]    On February 27, 2008, Defendant sent a letter to Beck in which Defendant also informed Beck that it was not in a position to approve Plaintiff's acquisition of the Beck dealership due to unresolved performance issues at other dealerships owned by Plaintiff.[28]

[18]    On February 27, 2008, Plaintiff filed an Application and Order to Extend Time to File Complaint, in which Plaintiff challenged Defendant's refusal to approve its application to purchase the Beck dealership assets.

[19]    On February 28, 2008, Beck and Plaintiff sent a letter to Defendant enclosing a dealer application package and a copy of the Asset Purchase Agreement.[29]

[20]    On March 3, 2008, Defendant sent a letter to Plaintiff acknowledging receipt of the February 28, 2008 letter from Plaintiff and Beck.[30]  Defendant attached to this letter a copy of its February 20, 2008 letter to Plaintiff and reiterated to Plaintiff that it would not review or approve a dealer application from Plaintiff at that time for the reasons stated in the February 20, 2008 letter.[31]

[21]    Also on March 3, 2008, Defendant sent a letter to Beck acknowledging receipt of the February 28, 2008 letter from Plaintiff and Beck.[32]  Defendant attached to this letter a copy of its February 27, 2008 letter to Beck and reiterated to Beck that it

---

[27] *Id.*
[28] *Id.* at ¶ 95, citing Ex. 19.
[29] *Id.* at ¶ 97, citing Ex. 20.
[30] *Id.* at ¶ 98, citing Ex. 21.
[31] *Id.*
[32] *Id.* at ¶ 99, citing Ex. 22.

would not review or approve a dealer application from Plaintiff at that time for the reasons stated in the February 27, 2008 letter.[33]

[22]    On March 17, 2008, Plaintiff filed its Complaint in this action, challenging Defendant's refusal to approve Plaintiff's application to purchase the Beck dealership assets under various common law and statutory theories of liability.

[23]    On information and belief, Plaintiff caused an article to be published in the May 19, 2008 issue of *Automotive News* concerning its disputes with Defendant over Plaintiff's obligations under the Letter Agreement (the "Article").[34]

[24]    According to the Article, Plaintiff accused Defendant of seeking to "extort" from Plaintiff millions of dollars in unneeded dealership improvements.[35]    Plaintiff's President, Scott Smith, is quoted in the Article as stating that Defendant is "trying to extort all they can."[36]  He continued, "It's so unfair.  Mercedes-Benz is holding the [Asset Purchase Agreement] hostage."[37]

III.

<u>THE PLAINTIFF'S MOTION</u>

[25]    Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state claim upon which relief can be granted.  Rule 12(b)(6).

---

[33] *Id.*

[34] *See* D. Harris, *Sonic: Mercedes tries to "extort" store upgrades*, Automotive News, May 19, 2008, at 1, 43.

[35] *Id.* at 1.

[36] *Id.* at 43.

[37] *Id.*  The Article explains that the Plaintiff "is suing [Defendant] in a North Carolina court, asserting that the automaker cannot legally tie the acquisition to renovations at other dealerships."  *Id.* at 1.  Nowhere in the Article does it appear that Plaintiff apprised the reporter of Plaintiff's ostensibly admitted breaches of its Dealer Agreements that caused Defendant to enter into the Letter Agreement, or of Plaintiff's express agreement that Defendant would have no obligation to approve any further dealership acquisitions by Plaintiff unless and until it made substantial progress in remedying the existing deficiencies.

[26]     When deciding a Rule 12(b)(6) motion, the well pleaded allegations of the complaint[38] are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted.  *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[27]     A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986).  However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief.  *Sutton v. Duke,* 277 N.C. at 108.

[28]     In *Sutton v. Duke*, the North Carolina Supreme Court adopted and quoted with approval the following language from *Conley v. Gibson*, 355 U.S. 41 (1957):

> [W]e follow . . . the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief.

> *Sutton*, 277 N.C. at 102.

[29]     The *Sutton* Court further held that Rule 12(b)(6) "generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery," quoting from *American Dairy Queen Corp. v. Augustyn*, 278 F. Supp. 717 (1967).  *Sutton*, 277 N.C. at 102.

---

[38] Or, as here, a counterclaim.

[30]     Moreover, the *Sutton* Court quoted *Shull v. Pilot Life Ins.*, 313 F. 2d 445 (5th Cir. 1963), recognizing that survival of a complaint at the Rule 12(b)(6) stage does not

> necessarily mean that there must be a full-blown trial. Utilizing the "facility of pretrial discovery, the real facts can be ascertained and by motion for summary judgment (or other suitable device) the trial court can determine whether as a matter of law there is any right of recovery on those facts."

*Sutton*, 277 N.C. at 104.

[31]     When determining whether a complaint states a claim upon which relief can be granted in the context of a Rule 12(b)(6) motion, the court may consider documents that are the subject of the action and specifically referenced in the complaint. *See Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60–61 (2001) ("This Court has further held that when ruling on a Rule 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant."); *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988) ("Because these documents were the subjects of some of plaintiffs' claims and plaintiffs specifically referred to the documents in their complaint, they could properly be considered by the trial court in ruling on a motion under Rule 12(b)(6)."). Consequently, the documents attached as exhibits or otherwise referred to in the Amended Answer and Counterclaims in this action are deemed to be before the court for Rule 12(b)(6) purposes.

A.

Defendant's Third Counterclaim – Promissory Estoppel

[32]     Plaintiff argues that Defendant's Third Counterclaim must be dismissed because Defendant does not allege any gratuitous promise and because North Carolina does not permit the offensive use of promissory estoppel.

[33]     Defendant contends that before the court can decide the Motion, it must perform a choice of law analysis with regard to the law of North Carolina and New Jersey.  *Hill-Rom Servs., Inc. v. Verses Tech., Inc.*, 2006 U.S. Dist. LEXIS 36477, * 10-12 (M.D.N.C. June 2, 2006) (denying a motion to dismiss because the court could not conclude where the last act essential to a meeting of the minds took place and, as such, where the contract was formed).  However, the court concludes that, under both North Carolina and New Jersey law, the result would be the same.  Consequently, a choice of law determination is not required.

[34]     In the context of North Carolina law, Defendant argues that (a) North Carolina does not require use of the word "gratuitous" when asserting a claim for promissory estoppel, but simply requires a party to plead that another made a promise it should have reasonably expected to induce action or forbearance and which did in fact induce such action or forbearance,  *Lee v. Paragon Group Contractors, Inc.*, 78 N.C. App. 334, 339 (1985); and (b) Defendant is using the doctrine of promissory estoppel defensively, not offensively, because it is pled as an alternative mechanism for enforcement of Plaintiff's promise in the Letter Agreement if the court ultimately finds the agreement itself unenforceable.  The court agrees.

[35]    In the context of New Jersey law, Defendant argues that Plaintiff (a) made a clear and definite promise to Defendant, (b) made the promise with the expectation that Defendant would rely on it, (c) Defendant in fact reasonably relied on the promise and (d) Defendant has suffered a detriment of a definite and substantial nature as a result of Plaintiff's failure to uphold its promises contained in the Letter Agreement and the 1998 Framework Agreement.  It contends such allegations are sufficient for Rule 12(b)(6) purposes.  *Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat. Bank*, 163 N.J. Super. 463, 479, 395 A.2d 222, 230 (App. Div. 1978), *cert denied*, 79 N.J. 488, 401 A.2d 243 (1979).  The court agrees.

[36]    Accordingly, in the instant action, regardless of whether North Carolina or New Jersey law applies, the court concludes that the allegations give sufficient notice of the nature and basis of the Third Counterclaim.  Further, upon examination of the totality of the facts alleged in Defendant's Amended Answer and Counterclaims, the court is unable to conclude from the face of the Amended Answer and Counterclaims that as a matter of law there is no set of facts that might be proven that would support this Counterclaim.

[37]    Therefore, the court CONCLUDES that in its Third Counterclaim, Defendant has stated a claim upon which relief can be granted; and as to the Third Counterclaim, the Motion should be DENIED.

B.

Defendant's Fourth Counterclaim – Unfair and Deceptive Trade Practices

(Defamation/ Slander Per Se)

[38]    Plaintiff contends Defendant's Fourth Counterclaim must be dismissed because (a) the facts disclosed on its face defeat the Fourth Counterclaim, (b) Plaintiff's statements are constitutionally protected speech and not per se defamatory and (c) to the extent Defendant's Fourth Counterclaim is premised on allegations repeated in Plaintiff's Complaint, the Fourth Counterclaim must be dismissed because the allegations are absolutely privileged as statements made in the course of a judicial proceeding.

[39]    In response, Defendant contends that in the context of the facts alleged in this dispute, Plaintiff's statement to *Automotive News* that Defendant is "trying to extort all they can" is (a) defamation/slander *per se*, (b) is not constitutionally protected speech and (c) not absolutely privileged.  It argues that its Fourth Counterclaim therefore alleges facts sufficient to state a claim upon which relief may be granted.  The court agrees.

[40]    Accordingly, in the instant action, the court concludes that the allegations give sufficient notice of the nature and basis of the Fourth Counterclaim.  Further, upon examination of the totality of the facts alleged in Defendant's Amended Answer, the court is unable to conclude from the face of the Amended Answer that as a matter of law there is no set of facts that might be proven that would support this Counterclaim.

[41]    Therefore, the court CONCLUDES that in its Fourth Counterclaim, Defendant has stated a claim upon which relief can be granted; and as to the Fourth Counterclaim, the Motion should be DENIED.

V.

CONCLUSIONS & ORDER

[42]    This case is not appropriate for a determination under Rule 12(b)(6) that there can be no liability to Plaintiff under the Third and Fourth Counterclaims.  To dismiss either of these Counterclaims at this point would be to "go too fast too soon."  *Sutton v. Duke*, 277 N.C. at 108.  By utilizing discovery, Plaintiff may be able to ascertain more precisely the details of Defendant's Counterclaims and whether it can prove facts that may entitle it to have a jury decide the merits of the Counterclaims.  If there then exists a good faith contention that Defendant cannot prove sufficient facts as to either of its Counterclaims, Plaintiff may utilize the pre-trial procedures of Rule 56 or other suitable procedural device.

[43]    NOW THEREFORE, based upon the foregoing CONCLUSIONS, it is ORDERED that Defendants' Motion to Dismiss Plaintiff's Third and Fourth Counterclaims is DENIED.

This the 4th day of May, 2010.