Emergys Corp. v. Consert, Inc., 2012 NCBC 19.

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE
                                       SUPERIOR COURT DIVISION
COUNTY OF WAKE                          10 CVS 13792

| | | |
|---|---|---|
| EMERGYS CORP., | ) | |
|          Plaintiff | ) | |
| | ) | **OPINION AND ORDER ON** |
|     v. | ) | **MOTIONS TO DISMISS** |
| | ) | |
| CONSERT, INC., | ) | |
|          Defendant | ) | |

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court, pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, all references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Chief Special Superior Court Judge for Complex Business Cases, comes before the court upon the parties' respective Motions to Dismiss (collectively, the "Motions") pursuant to Rule 12(b)(6), North Carolina Rules of Civil Procedure ("Rule(s)"); and

THE COURT, after considering the Motions, briefs in support of and in opposition to the Motions, other submissions of counsel and appropriate matters of record, CONCLUDES that the Motions should be GRANTED in part and DENIED in part, for the reasons stated herein.

*Harris Winfield Sarratt & Hodges, LLP, by Donald J. Harris, Esq. for Plaintiff.*

*Womble Carlyle Sandridge & Rice, PLLC, by Christopher W. Jones, Esq. and Robert T. Numbers, II, Esq. for Defendant.*

Jolly, Judge.

## PROCEDURAL HISTORY

[1]     On August 13, 2010, Plaintiff filed its Complaint in Wake County.  In the Complaint, Plaintiff alleges the following causes of action ("Claim(s)"): (a) First Claim (Declaratory Judgment); (b) Second Claim (Breach of Contract); (c) Third Claim (Unjust Enrichment); (d) Fourth Claim (Fraud/Fraudulent Inducement); (e) Fifth Claim (Negligent Misrepresentation); (f) Sixth Claim (Unfair and Deceptive Trade Practices) and (g) Seventh Claim (Preliminary and Permanent Injunctive Relief).

[2]     On October 20, 2010, Defendant filed its Answer and Counterclaim, alleging the following counterclaims ("Counterclaim(s)")[1]: (a) First Counterclaim (Breach of Contract); (b) Second Counterclaim (Breach of Fiduciary Duty) and (c) Third Counterclaim (Unfair and Deceptive Trade Practices).

[3]     Also on October 20, 2010, Defendant filed its Motion to Dismiss ("Defendant's Motion"), which seeks dismissal of Plaintiff's First, Third, Fourth, Fifth and Sixth Claims.

[4]     On November 4, 2010, Defendant filed its First Amended Answer and Counterclaim as a matter of right, pursuant to Rule 15.  This pleading did not add any substantive Counterclaims.

[5]     On December 10, 2010, Plaintiff filed its Motion to Dismiss ("Plaintiff's Motion"), which seeks dismissal of Defendant's Second and Third Counterclaims.[2]

---

[1] The Counterclaims are not stated as separate claims for relief under clearly defined separate subheadings.  For the sake of clarity, the court has elected to label and number the respective Counterclaims as reflected in this Opinion and Order.

[2] Plaintiff's Motion to Dismiss seeks dismissal of Defendant's "Counterclaim." It does not specify whether Plaintiff contends all, or only some, of Defendant's Counterclaims are subject to dismissal.  However, Plaintiff's Memorandum of Law in Support of Motion to Dismiss Counterclaim addresses only Defendant's Second and Third Counterclaims.  Accordingly, the court addresses only those two Counterclaims.

[6]     On December 10, 2010, Plaintiff also filed a Motion for Leave to Amend its Complaint.  This proposed pleading did not add any substantive Claims.

[7]     On January 10, 2011, Defendant similarly filed a Motion for Leave to Amend its First Amended Answer and Counterclaim.

[8]     On September 28, 2011, the court entered an Order granting the parties' respective Motions for Leave to Amend.

[9]     In its Second Amended Answer and Counterclaim, deemed filed on September 28, 2011, Defendant alleged the following additional Counterclaims: (a) Fourth Counterclaim (Negligent Misrepresentation), (b) Fifth Counterclaim (Breach of Duty of Good Faith and Fair Dealing) and (c) Sixth Counterclaim (Fraud).[3]

[10]     Plaintiff's Motion does not address Defendant's Fourth, Fifth and Sixth Counterclaims.

[11]     On April 2, 2012, Plaintiff filed its Second Motion for Leave to Amend ("Plaintiff's Second Motion"), whereby it seeks to add an Eighth Claim (Rescission). The time for Defendant to respond to Plaintiff's Second Motion has not expired. Accordingly, Plaintiff's Second Motion is not before the court for consideration at this time.

[12]     The Motions have been briefed, argued and are ripe for adjudication.[4]

---

[3] *See* note 1.
[4] It appears that the parties intend for their respective previously-filed Motions to apply to the Amended Complaint and Second Amended Answer and Counterclaim.  Accordingly, the court deems the parties' Motions to apply to said amended pleadings.

FACTUAL BACKGROUND

Among other things, the Complaint and Counterclaims allege as follows:

[13]   Plaintiff Emergys Corporation ("Emergys") is a corporation duly organized and existing pursuant to the laws of the State of North Carolina.  Emergys provides business technology solutions across a variety of industries.

[14]   Defendant Consert, Inc. ("Consert") is a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in Raleigh, North Carolina.[5]  Consert specializes in the development and implementation of load management systems designed to conserve energy and lower costs for utility companies.

[15]   In June 2009, Consert began looking for a new software developer to aid in the development and completion of its energy management software, referred to as the Kermit Application (the "Software").[6]

[16]   Emergys had a working relationship with Consert and decided to prepare a bid for work on the Software.  At the time and while Emergys was preparing its bid, Emergys alleges that Joe Forbes ("Forbes"), a principal of Consert, repeatedly represented to Emergys that Consert would direct future business to Emergys and grant Emergys "preferred vendor" status.[7]

[17]   Emergys prepared a bid that provided an estimate of $1,300,000 for development of the first version of the Software for Consert by December 31, 2009.  Emergys alleges that this estimate constituted a forty-percent (40%) discount off its

---

[5] Consert was headquartered in Raleigh, North Carolina, at the commencement of this civil action, but recently moved its headquarters to San Antonio, Texas.
[6] Am. Compl. ¶ 7.
[7] *Id.* ¶ 14.

regular rates and was offered because of Forbes' representations to Emergys about future business prospects and preferred vendor status.[8]

[18]    After the submission of Emergys' bid, the parties entered contract negotiations.  During the negotiations, Consert explained its financial situation and told Emergys that it was trying to raise venture capital.[9]  The parties discussed various financing options.  Ultimately, Emergys offered to defer billing of the first $300,000 for work on the Software until October 2009 and to defer billing for the remainder of the balance until March 2010.[10]  Emergys told Forbes and Consert that these were firm payment deadlines.[11]

[19]    On July 21, 2009, after extensive arms length negotiations,[12] the parties executed a Consulting Agreement and an accompanying Statement of Work (collectively, the "Agreement").[13]

[20]    After the execution of the Agreement, Emergys began performing software development services.

[21]    In October 2009, Consert offered to pay Emergys with 3,500 shares of stock in lieu of the first $300,000 payment that was due under the Agreement.  Emergys ultimately accepted this offer.[14]

[22]    Subsequently, Emergys completed the work on the first version of the Software.  The total price to Consert for this work, completed during the period ending

---

[8] *Id.* ¶ 14.
[9] *Id.* ¶ 16.
[10] *Id.* ¶ 19.
[11] *Id.*
[12] *Id.* ¶ 21.
[13] Compl., Ex. A.  Effective date of the Agreement is July 20, 2009.  Forbes signed the Agreement for Consert on July 21, 2009.  Both Plaintiff and Defendant acknowledge that the Agreement is a valid contract between the parties.  Am. Compl. ¶ 22; Def. Mem. Supp. Mot. Dismiss 6.
[14] Def. Mem. Supp. Mot. Dismiss 3; Am. Compl. ¶ 32.

December 31, 2009, was $1,000,000, substantially less than Emergys' bid of $1,300,000.[15]

[23]    In late 2009, following the completion of Emergys' work on the first version of the Software, Consert requested that Emergys begin efforts to develop Kermit 2.0, the next version of the Software (the "Software 2.0").[16]  At this point, Emergys alleges that it made it clear to Consert that payment for all future development services needed to be made in a timely manner or it would stop development efforts.[17]  Additionally, Emergys alleges that Forbes approved the new user interface design and application architecture.[18]

[24]    On or around January 1, 2010, Emergys and Consert executed another Statement of Work – SOW Addendum 3 (the "Addendum").[19]  Consert alleges that prior to the execution of this document, Emergys was aware of the general uncertainty surrounding Consert's financing arrangements.[20]

[25]    Subsequent to the execution of the Addendum, Emergys continued its software development services for Consert.[21]  In February 2010, Emergys received payment for the software development services that were provided during January 2010.[22]  At this time, Emergys asked about the status of Consert's venture capital

---

[15] Am. Compl. ¶ 35.
[16] *Id.* ¶ 36; Def. Mem. Supp. Mot. Dismiss 3.
[17] *Id.*
[18] Am. Compl. ¶ 40.
[19] Compl., Ex. C.  There was also a previous Addendum 2, which was made shortly after the original Agreement that "redefined" the work to be done for Defendant.  It is not relevant to the current Motions. Compl., Ex. B.
[20] Am. Answer & Countercl. ¶ 17.
[21] Am. Compl. ¶ 39 (labeling this version of the software Kermit 2.0).
[22] *Id.* ¶ 42.

funding and notified Consert that Emergys was not in a position to postpone the March 2010 payment of approximately $692,000.[23]

[26]    In March 2010, Consert notified Emergys that it had not received its venture capital funding and would not be able to make the necessary payment until that funding was received.[24]  As a result, on March 30, 2010, Emergys ceased all software development and demanded payment of all outstanding balances.[25]

[27]    Emergys alleges that it suffered adverse financial consequences and was forced to lay off employees due to Consert's failure to pay the balance.[26]  Despite Consert's failure to pay the balance due, Emergys alleges that it turned over all of its work in progress to Consert to avoid disrupting the venture capital funding effort.[27]

[28]    On June 18, 2010, Consert received its venture capital funding.[28]  On June 28, 2010, Emergys sent a letter to Consert demanding payment of the $692,000.[29]

[29]    On June 25, 2010, Emergys alleges that Forbes told Emergys that Consert would pay the outstanding balance only if Emergys assigned all of its rights, title and interest in the Software (including the Software 2.0) and in its proprietary "Webframe" platform to Consert.[30]  Emergys refused to accept the payment conditions imposed by Consert.[31]

[30]    Consert alleges that it clearly told Emergys that no proprietary information should be included or used in the development of the Software 2.0.  Consert further

---

[23] *Id.*
[24] *Id.* ¶ 43; Def. Mem. Supp. Mot. Dismiss 4.
[25] Am. Compl. ¶ 47.
[26] *Id.* ¶ 44.
[27] *Id.* ¶ 47.
[28] *Id.* ¶ 49.
[29] Compl., Ex. D.
[30] Am. Compl. ¶ 50.
[31] *Id.* ¶ 51; Def. Mem. Supp. Mot. Dismiss 4.

alleges that, in spite of assurances to the contrary, Emergys did include proprietary information in the Software 2.0 that it developed for Consert.

[31] Consert alleges that the inclusion of proprietary material was either negligent or intentional, that it relied on Emergys' representations that no proprietary information would be included in the code, and that such inclusion has resulted in significant damage to Consert.[32]

[32] As of the filing of the Complaint, Consert has refused to pay the outstanding balance due to Emergys under the Agreement.[33]

## DISCUSSION

### Rule 12(b)(6)

[33] Dismissal of an action pursuant to Rule 12(b)(6) is appropriate when the complaint fails to state a claim upon which relief can be granted. In deciding a Rule 12(b)(6) motion, the well-pleaded allegations of the complaint are taken as true and admitted, but conclusions of law or unwarranted deductions of facts are not admitted. *Sutton v. Duke*, 277 N.C. 94, 98 (1970).

[34] A complaint fails to state a claim upon which relief can be granted when either (a) the complaint on its face reveals that no law supports the plaintiff's claim, (b) the complaint on its face reveals the absence of facts sufficient to make a good claim or (c) some fact disclosed in the complaint necessarily defeats the plaintiff's claim. *Jackson v. Bumgardner*, 318 N.C. 172, 175 (1986). However, a complaint should not be dismissed for failure to state a claim upon which relief can be granted unless it (a) does not give sufficient notice to the defendant of the nature and basis of the plaintiff's

---

[32] Second Am. Answer & Countercl. ¶¶ 7-14.
[33] Am. Compl. ¶ 52.

claim or (b) appears beyond a reasonable doubt that the plaintiff could not prove any set of facts in support of his claim that would entitle him to relief. *Sutton*, 277 N.C. at 102.

<u>Plaintiff's Claims</u>

<u>Plaintiff's First Claim (Declaratory Judgment)</u>

[35]    Plaintiff alleges that it is entitled to a declaratory judgment with regard to the validity of the Agreement[34] and ownership of various intellectual property rights. Defendant contends that Plaintiff has failed to establish an actual controversy with regard to these Claims. Defendant asserts that Plaintiff has not alleged any facts supporting the Claim that there is an existing disagreement over the validity and enforceability of the Agreement. Additionally, Defendant argues that the parties' respective intellectual property rights are not in dispute, but that this Claim merely restates Plaintiff's Claim for breach of contract.[35] Indeed, "when a litigant seeks relief under the declaratory judgment statute, he must set forth in his pleading all facts necessary to disclose the existence of an actual controversy between the parties to the action with regard to their respective rights and duties." *Lide v. Mears*, 231 N.C. 111,118 (1949). Defendant acknowledges that the Agreement is a valid contract between the parties.[36] Therefore, the court CONCLUDES that there exists no controversy as to the validity of the Agreement between the parties. Defendant's Motion, as to Plaintiff's Claim for declaratory judgment with respect to the validity of the Agreement, should be GRANTED.

[36]    With respect to the parties' intellectual property rights, however, the court CONCLUDES that Plaintiff has pleaded sufficient facts to establish that an actual

---

[34] Including the subsequent addenda.
[35] Def. Reply Mem. Supp. Mot. Dismiss 2.
[36] *Id.* 1.

controversy exists between the parties.  As such, Plaintiff's Claim meets the pleading requirements under the standard articulated by Rule 12(b)(6) and *Sutton*, 277 N.C. at 102.  Therefore, Defendant's Motion, as to Plaintiff's Claim for declaratory judgment with respect to the parties' intellectual property rights, should be DENIED.

### Plaintiff's Third Claim (Unjust Enrichment)

[37]    Plaintiff alleges that Defendant benefited from the work performed by Plaintiff and that Defendant has not paid for that work, resulting in unjust enrichment.[37] Under North Carolina law, a claim for unjust enrichment is precluded by the existence of a written contract.  *Paul L. Whitfield, P.A. v. Gilchrist*, 348 N.C. 39, 42 (1998); *Maxwell v. Michael P. Doyle, Inc.*, 164 N.C. App. 319, 328 (2004); *Horack v. S. Real Estate Co. of Charlotte, Inc.*, 150 N.C. App. 305, 311 (2002).  Plaintiff concedes that if the Agreement is controlling, then it will be unable to recover under its unjust enrichment Claim.[38]  As discussed above, the court CONCLUDES that there is no controversy as to the validity of the Agreement.  Therefore, Defendant's Motion as to Plaintiff's Claim for unjust enrichment should be GRANTED.

### Plaintiff's Tort-Based Fourth, Fifth and Sixth Claims

[38]    Defendant contends that Plaintiff's Complaint attempts the "tortification" of a simple breach of contract action.[39]  Defendant argues that as such, Plaintiff's Fourth, Fifth and Sixth Claims, for fraud, negligent misrepresentation and unfair and deceptive trade practices, should be dismissed without further analysis.  Indeed, "an independent tort action in a breach of contract action . . . [must involve] some other aggravating element outside the breach of contractual duties."  *Garlock v. Hilliard*, 2000 NCBC 11, ¶ 33 (N.C. Super. Ct.

---

[37] Am. Compl. ¶¶ 68-69.
[38] Pl. Mem. Opp'n Def. Mot. Dismiss 16.
[39] Def. Mem. Supp. Mot. Dismiss 8.

Aug. 22, 2000) (citing *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998)), *see also N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 294 N.C. 73, 81 (1978) (citations omitted) ("Ordinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor."). An independent tort may arise out of a breach of contract only in "carefully circumscribed" instances where the tort is "identifiable" and distinct from the primary breach of contract claim. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 111-12 (1976). "The mere failure to carry out a promise in contract . . . does not support a tort action for fraud." *Strum v. Exxon Co., USA*, 15 F.3d 327, 331 (4th Cir. 1994) (citing *Hoyle v. Bagby*, 253 N.C. 778, 781 (1961)).

[39]    Here, contrary to Defendant's contention, Plaintiff's tort claims are identifiable and distinct from the primary breach of contract claim, which is based upon Defendant's promise to pay for services rendered. Among other things, Plaintiff's tort claims focus on alleged misrepresentations made during the parties' contract negotiations that induced Plaintiff to enter into the Agreement, when it otherwise would not have done so. Such allegations are distinct from a breach of contract action and, if properly alleged, are sufficient to withstand Defendant's Motion. *See Media Network, Inc. v. Mullen Adver., Inc.*, 2007 NCBC 1, ¶¶ 113-14 (N.C. Super. Ct. Jan. 19, 2007) (rejecting the defendant's argument that the plaintiff merely alleged breach of contract, where the complaint contained allegations of misrepresentations made during the parties' contract negotiations, giving rise to separate tort-based claims). The court will address each of the three Claims in turn.

<u>Plaintiff's Fourth Claim (Fraud/Fraudulent Inducement)</u>

[40]    Plaintiff alleges that Defendant fraudulently induced Plaintiff to enter into the Agreement with promises of payment, preferred vendor status and future business

opportunities.  Defendant contends that Plaintiff's fraud Claim fails because (a) it lacks the necessary particularity, (b) it did not provide any factual allegations that demonstrate Defendant knew its representations were false at the time they were made and (c) Plaintiff's reliance on these allegedly false statements was unreasonable.[40]

[41]    With regard to this Fourth Claim, Plaintiff's initial Complaint failed to plead sufficient particular facts to support a fraud claim under the standard of Rule 9(b).  Rather, the Complaint contained only general allegations of wrongdoing by Consert and failed to specify a particular person who allegedly made fraudulent misrepresentations.  However, in its Amended Complaint, Plaintiff alleges that specific false representations were made to Emergys by Forbes, on behalf of Consert.

[42]    Although this Claim presents a close Rule 12(b)(6) question, our system is one of notice pleading, and in light of the additional factual allegations in the Amended Complaint, the court is forced to CONCLUDE that Plaintiff has pleaded sufficiently its fraud Claim under the standard articulated by Rule 12(b)(6), Rule 9(b) and *Sutton*, 277 N.C. at 102.  Accordingly, Defendant's Motion as to said Claim should be DENIED.[41]

<u>Plaintiff's Fifth Claim (Negligent Misrepresentation)</u>

[43]    To state a claim for negligent misrepresentation under North Carolina law, a claimant must allege that (a) the claimant justifiably relied (b) to his detriment (c) on information prepared without reasonable care (d) by one who owed the relying party a duty of care.  *Brinkman v. Barrett Kays & Assocs.*, 155 N.C. App. 738, 742 (2003) (internal quotation omitted).

---

[40] Def. Mem. Supp. Mot. Dismiss 12.
[41] Defendant can test this Fourth Claim at a later stage of this matter pursuant to Rule 56.

[44]    A breach of the duty owed in negligent misrepresentation occurs when "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions . . . ." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 218 (1999).  Here, Plaintiff alleges that Defendant negligently made materially false or misleading statements and representations concerning Defendant's ability and/or willingness to pay for the software development services and its intention to give Plaintiff preferred vendor status and future business.  Defendant contends that this claim should be dismissed because the Complaint does not contain the necessary factual allegations for a claim of negligent misrepresentation.  However, the court CONCLUDES that Plaintiff has pleaded sufficiently its negligent misrepresentation Claim under the standard articulated by Rule 12(b)(6) and *Sutton*, 277 N.C. at 102.  Accordingly, Defendant's Motion as to said Claim should be DENIED .

<u>Plaintiff's Sixth Claim (Unfair and Deceptive Trade Practices)</u>

[45]    Plaintiff alleges unfair and deceptive trade practices, arising from many of the same allegations of its other claims.  Defendant contends that Plaintiff's unfair and deceptive trade practices Claim fails to allege the necessary aggravating factors to elevate this matter beyond a breach of contract claim.  However, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti v. Buckland,* 328 N.C. 240, 243 (1991) (citing *Hardy v. Toler*, 288 N.C. 303, 309 (1975)); *Allen v. Roberts Constr. Co., Inc.*, 138 N.C. App. 557, 569 (2000).  As previously indicated, Plaintiff has pleaded sufficiently its Claim for fraud; and as such, the court CONCLUDES Plaintiff has pleaded sufficiently its claim for unfair and deceptive trade practices under the

standard articulated by Rule 12(b)(6) and *Sutton*, 277 N.C. at 102.  Therefore, Defendant's Motion as to this Claim should be DENIED.

<u>Defendant's Counterclaims</u>

<u>Defendant's Second Counterclaim (Breach of Fiduciary Duty)</u>

[46]    Defendant contends that Plaintiff breached its fiduciary duty to Defendant by creating a fiduciary relationship in which Defendant was dependent on Plaintiff and then suddenly abandoning the project, leaving Defendant in a "dire business position."[42] "[F]or a fiduciary duty to exist, there must first be a fiduciary relationship between the parties." *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 472 (2009) (citing *Dalton v. Camp*, 353 N.C. 647, 651 (2001)).  A fiduciary relationship has been defined broadly as a relationship in which "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dalton*, 353 at 651.  Domination and influence are essential components in a fiduciary relationship.  *Id.*  "Only when one party figuratively holds all the cards – all the financial power, or technical information, for example – have North Carolina courts found that the special circumstance of a fiduciary relationship exists." *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613 (*citing Broussard*, 155 F.3d at 348).  Additionally, parties to a contract do not become each other's fiduciaries, but only owe each other the duties specified by the terms of the contract and the UCC.  *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61 (1992).

[47]    Defendant alleges that Plaintiff assumed the role of fiduciary and "accepted that higher duty of care" to Defendant by "undertaking the project and

---

[42] Am. Answer & Countercl. ¶¶ 21-22.

causing [Defendant] to become dependent upon [Plaintiff], assuming an ownership interest in the company and encouraging investment of additional capital based, in part, upon [Plaintiff's] continued work."[43]  However, the terms for payment and completion of the project were negotiated between the parties at arms-length.[44]  Further, Plaintiff's equity stake in Defendant was acquired in place of a payment owed and there is no allegation that this ownership stake afforded Plaintiff any control over Defendant.  It is well established under North Carolina law that the element of control is what gives rise to a fiduciary duty between the controlling shareholder and the minority.  *Hill v. Erwin Mills, Inc.*, 239 N.C. 437, 443 (1954) ("The rights and powers vested in those holding a majority of the capital stock in a corporation imposes on them a fiduciary relationship as between them and the minority stockholders."); *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 407 (2000) (quoting *Gaines v. Long Mfg. Co.*, 243 N.C. 340, 344-45 (1951)) ("It is the fact of control of the common property held and exercised, and not the particular means by which or manner in which the control is exercised, that creates the fiduciary obligation on the part of the majority stockholders in a corporation for the minority holders.").

[48]     Therefore, the court CONCLUDES that Defendant has not alleged facts sufficient to show that Plaintiff exerted the requisite domination or influence over Defendant giving rise to the existence of a fiduciary relationship.  The duties the parties owed one another were merely contractual in nature.  Accordingly, Plaintiff's Motion should be GRANTED as to Defendant's Counterclaim for breach of fiduciary duty.

---

[43] *Id.* ¶ 21,
[44] Am. Compl. ¶ 21; Def. Mem. Supp. Mot. Dismiss 2.

<u>Defendant's Third Counterclaim (Unfair and Deceptive Trade Practices)</u>

[49]    Defendant alleges unfair and deceptive trade practices arising from allegations that Plaintiff included proprietary information in the Software 2.0 it developed for Defendant without Defendant's knowledge and against Defendant's requests.  Plaintiff contends that Defendant does not provide sufficient factual allegations to support a claim for unfair and deceptive trade practices.

[50]    However, as previously stated in this Opinion and Order, "proof of fraud would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Bhatti,* 328 N.C. at 243 (citing *Hardy*, 288 N.C. at 309); *Allen*, 138 N.C. App. at 569.  Here, by way of its Second Amended Answer and Counterclaim, Defendant has stated a fraud Counterclaim against Plaintiff, which Counterclaim is not a subject of Plaintiff's Motion. Consequently, the court CONCLUDES Plaintiff has pleaded sufficiently its Counterclaim for unfair and deceptive trade practices under the standard articulated by Rule 12(b)(6) and *Sutton*, 277 N.C. at 102.  Therefore, Plaintiff's Motion as to this Counterclaim should be DENIED.

NOW THEREFORE, based on the foregoing, it hereby is ORDERED that:

[51]    To the extent Plaintiff's First Claim (Declaratory Judgment) seeks a declaration with respect to the validity of the Agreement, Defendant's Motion is GRANTED, and said Claim is DISMISSED.

[52]    To the extent Plaintiff's First Claim (Declaratory Judgment) seeks a declaration with respect to the parties' respective intellectual property rights arising from the Agreement, Defendant's Motion is DENIED.

[53]    Defendant's Motion with regard to Plaintiff's Third Claim (Unjust Enrichment) is GRANTED, and said Claim is DISMISSED.

[54]    Defendant's Motion with regard to Plaintiff's Fourth Claim (Fraud/Fraudulent Inducement), Fifth Claim (Negligent Misrepresentation) and Sixth Claim (Unfair and Deceptive Trade Practices) is DENIED.

[55]    Plaintiff's Motion with regard to Defendant's Second Counterclaim (Breach of Fiduciary Duty) is GRANTED, and said Counterclaim is DISMISSED.

[56]    Plaintiff's Motion with regard to Defendant's Third Counterclaim (Unfair and Deceptive Trade Practices) is DENIED.

[57]    Except as specifically granted above, the parties' respective Motions are DENIED.

[58]    On or before Monday, April 23, 2012, the parties shall submit to the court a Case Management Report pursuant to the provisions of Rule 17, General Rules of Practice and Procedure for the North Carolina Business Court.

[59]    On Monday, April 30, 2012, at 12:00 noon, at the North Carolina Business Court, 225 Hillsborough Street, Suite 303, Raleigh, North Carolina, the court will conduct a Case Management Conference with counsel for all parties to this action.

This the 5th day of April, 2012.