Lafayette Vill. Pub, LLC v. Burnham, 2025 NCBC 8.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV031560-910

LAFAYETTE VILLAGE PUB, LLC,
JOHN S. BRONSON, and PAUL G.
BRONSON,

    Plaintiffs,

v.

KENNETH C. BURNHAM and
EXECUTIVE SUITES AT
LAFAYETTE VILLAGE, LLC,

    Defendants.

**ORDER AND OPINION ON
DEFENDANT KENNETH C.
BURNHAM'S MOTION TO DISMISS
OR IN THE ALTERNATIVE MOTION
FOR MORE DEFINITE STATEMENT**

**THIS MATTER** is before the Court on Defendant Kenneth C. Burnham's

Motion to Dismiss or in the Alternative Motion for More Definite Statement ("Motion

to Dismiss" or the "Motion," ECF No. 7).

**THE COURT**, having considered the Motion, the parties' briefs, the

arguments of counsel, the applicable law, and all appropriate matters of record,

**CONCLUDES** that the Motion to Dismiss should be **GRANTED in part**, **DENIED**

**in part**, and **DISMISSED as moot in part**.

> *Ragsdale Liggett PLLC, by Amie C. Sivon and William W. Pollock, for
> Plaintiffs Lafayette Village Pub, LLC, John S. Bronson, and Paul G.
> Bronson.*

> *Equitas Law Partners, LLP, by Thomas S. Babel, for Defendant Kenneth
> C. Burnham.*

Davis, Judge.

## INTRODUCTION

1.      In this refiled action involving a dispute between members of two limited liability companies, the plaintiffs allege that the defendant has for years engaged in various acts of financial mismanagement and self-dealing with respect to the companies.  As a result, the plaintiffs seek monetary relief—both individually and derivatively—along with various forms of equitable relief, including judicial dissolution of the companies.  In resolving the present Motion, the Court revisits the issue of what circumstances must exist for one member of a limited liability company to owe a fiduciary duty to other members.

## FACTUAL AND PROCEDURAL BACKGROUND

2.      The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint and in documents attached to, referred to, or incorporated by reference in the complaint that are relevant to the Court's determination of the motion.  *See, e.g., Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3.      Lafayette Village Pub, LLC (the "Pub") is a North Carolina limited liability company ("LLC") with its principal place of business in Wake County, North Carolina.  (Compl. ¶ 1.)  It leases and operates The Village Grill restaurant (the "Restaurant") within the Lafayette Village Shopping Center (the "Shopping Center").  (Compl. ¶ 2.)

4.    On or about 6 October 2010, the Pub was formed by the filing of its Articles of Organization with the North Carolina Secretary of State. (Compl. ¶ 10.)

5.    Pursuant to the Articles of Organization, the Pub was to be member-managed with all members having equal managerial power and authority. (Compl. ¶ 10.) However, the Pub has never adopted an operating agreement pursuant to N.C.G.S. § 57D-2-30. (Compl. ¶ 11.)

6.    Executive Suites at Lafayette Village, LLC ("Executive Suites," and together with the Pub, the "Companies") is also a North Carolina LLC. (Compl. ¶ 39.) It operates and leases furnished office spaces with shared business amenities within the Shopping Center. (Compl. ¶ 40.)[1]

7.    As with the Pub, Executive Suites' Articles of Organization provided that the company would be member-managed and that all members would possess equal managerial power and authority. (Compl. ¶ 39.) Furthermore, Executive Suites likewise lacks an operating agreement. (Compl. ¶ 41.)

8.    The Companies currently have three member-managers, each of whom possesses a minority individual ownership interest: Plaintiffs John S. Bronson and Paul G. Bronson (collectively, the "Bronsons") and Defendant Kenneth C. Burnham. (Compl. ¶¶ 22, 45–46.)

---

[1] Although the Pub and Executive Suites are identically situated parties in this case, the Pub is designated as a plaintiff, while Executive Suites is identified as a defendant. Each of them is more properly deemed a nominal defendant. *See Wright v. LoRusso Ventures, LLC*, 2022 NCBC LEXIS 33, at *1–2 (N.C. Super. Ct. Apr. 22, 2022) (noting that "[b]ecause an LLC is a necessary party to any litigation brought derivatively in its name, the [plaintiffs] should have named [the LLC] as a nominal defendant[]" (cleaned up)).

## A.    Allegations Regarding the Pub

9.      Upon the Pub's formation, Burnham was its sole member and manager. (Compl. ¶ 10.)

10.     However, shortly afterwards, a 20% ownership interest was issued to an individual named Brad Sluman, and another 20% ownership interest was issued to a person named Daniel Gebauer.  (Compl. ¶¶ 16–17.)

11.     In October 2010, the Bronsons each paid $25,000 in exchange for a 6.666% ownership interest.  (Compl. ¶ 17.)

12.     From 2010 through 2021, Burnham, Sluman, Gebauer, and the Bronsons engaged in a series of transactions and capital contributions.  (Compl. ¶¶ 17–23.)  As a result of these activities, Sluman and Gebauer reduced—and eventually eliminated—their ownership interests in the Pub, while the Bronsons increased their own interests.  (Compl. ¶¶ 17–23.)  The Complaint contains the following summary of the resulting shifts in ownership interests in the Pub that ensued between 2010 and 2021:

|  | Burnham | Sluman | Gebauer | Bronsons |
|---|---|---|---|---|
| **October 2010** | 46.66% | 20% | 20% | 13.34% |
| **Late 2010 or Early 2011** | 41.66% | 25% | 20% | 13.34% |
| **14 April 2011** | 40.55% | 24.35% | 19.43% | 15.67% |
| **Late April 2011** | 40.55% | 24.35% | 0% | 35.1% |
| **May 2011** | 40.55% | 9.35% | 6.03% | 44.07% |
| **2 March 2021** | 45.93% | 0% | 0% | 54.07% |

(Compl. ¶¶ 17–23.)[2]

---

[2] The above chart sets out the Bronsons' ownership interests collectively as the Complaint is unclear as to how their ownership interests were divided between them.

13.     The Bronsons allege that, at all relevant times, Burnham has exercised complete "dominion and control" over the Pub by acting as its sole manager. (Compl. ¶ 25.)

14.     By virtue of this exercise of control, the Bronsons assert that Burnham has mismanaged the Pub's finances and engaged in unilateral conduct that was detrimental to the Bronsons. (Compl. ¶ 32.)

15.     The Bronsons allege that since 2 March 2021, Burnham has used Pub funds to pay for personal expenses. (Compl. ¶¶ 32(b), 32(m).)

16.     For example, Burnham unilaterally, and without consulting the Bronsons, closed the Restaurant and entered into various construction contracts valued at over $100,000 to conduct major renovations. (Compl. ¶¶ 32(f)–(g).) While using Pub funds to cover the cost of construction materials, furniture, fixtures, and wallpaper that were purportedly installed at the Restaurant, Burnham directed that those improvements instead be made at his personal residence. (Compl. ¶¶ 32(a)–(b).)

17.     Additionally, from June 2022 through February 2023, Burnham used Pub funds to pay his own personal legal fees to the law firm of Davis Hartman Wright LLC. (Compl. ¶ 32(l).)

18.     The Bronsons also allege that Burnham has undertaken efforts to improperly dispose of the Pub's existing property. (Compl. ¶¶ 32(d)–(e).)

19. For example, Burnham has had Pub property, including furniture and televisions, removed from the Restaurant and delivered to his personal residence. (Compl. ¶ 32(d).)

20. In late 2022, Burnham auctioned off various pieces of the Pub's décor and artwork under the guise of "charity," but has refused to provide the Bronsons with any records allowing them to discern which charitable organizations—if any—actually received the proceeds of the auction. (Compl. ¶ 32(e).)

21. The Bronsons also assert that Burnham has siphoned or otherwise misdirected Pub resources to himself and his family. (Compl. ¶¶ 32(c), 32(h).)

22. For example, Burnham issued numerous checks to himself using the Pub's bank accounts and authorized the Pub to pay his then-wife, Cathleen Burnham, $2,269 per month from January through August 2022, which he attempted to "disguise" as loan repayments. (Compl. ¶¶ 32(h), (q).)

23. Burnham also hired the sister of his live-in girlfriend, despite her having no restaurant experience or training, and proceeded to pay her for time not actually worked. (Compl. ¶ 32(r).)

24. Since at least August 2021, Burnham has used Pub funds to pay himself over $4,000 per month without documentation or justification. (Compl. ¶ 32(c).)

25. Burnham has also opened lines of credit, executed loan agreements, incurred debt, and transferred Pub funds to unknown recipients without informing the Bronsons. (Compl. ¶¶ 32(i)–(k).)

26. On 6 April 2020 and 28 January 2021, Burnham caused the Pub to enter into Small Business Administration loans with Canandaigua National Bank and Trust Company worth more than $300,000 without consulting the Bronsons and without properly documenting the disposition of the loaned funds. (Compl. ¶¶ 32(o)–(p).)

27. Burnham also authorized the Pub to receive government disaster loans and has refused to provide the Bronsons with documentation concerning the disposition of those funds. (Compl. ¶ 36.)

28. At all relevant times, Burnham has maintained exclusive possession and control of the Pub's documents, including bank, payroll, and business records, and has repeatedly denied the Bronsons access to them. (Compl. ¶¶ 29–31.)

29. Burnham has also maintained exclusive possession and control of the Pub's membership interest register, which he has refused to disclose to the Bronsons. (Compl. ¶ 34.) The Bronsons allege, upon information and belief, that Burnham has transferred, in whole or in part, his membership interest in the Pub to other third parties in exchange for the cancellation of his personal debts. (Compl. ¶ 35.)

30. On or about 6 October 2021, the Bronsons served the Pub with a written demand to investigate any wrongdoing by Burnham and to take such action as appropriate to stop his wrongful conduct and obtain economic redress. (Compl. ¶ 37.) More than ninety days passed without the Pub taking any action. (Compl. ¶ 37.)

**B.     Allegations Regarding Executive Suites**

31.     At all relevant times, the Bronsons have each owned a 25% interest in Executive Suites, and Burnham has owned a 50% interest.  (Compl. ¶¶ 45–46.)

32.     The Bronsons allege that Burnham has exercised complete "dominion and control" over Executive Suites by acting as the sole manager.  (Compl. ¶ 54.)

33.     Through his exercise of control, the Bronsons allege that Burnham has—through various means—mismanaged Executive Suites' finances and engaged in unilateral conduct that was detrimental to the Bronsons.  (Compl. ¶ 54.)

34.     In essence, the Bronsons allege that Burnham misused Executive Suites' funds for his own personal use, utilized the company's employees for his personal business ventures, failed to protect Executive Suites' assets, and failed to distribute company profits to the Bronsons.  (Compl. ¶¶ 54(a)–(d).)

35.     The Bronsons also contend that Burnham has locked them out of the property leased by Executive Suites and has refused to provide them with physical access to the leased premises.  (Compl. ¶ 56.)

36.     At all relevant times, Burnham has maintained exclusive possession and control of Executive Suites' documents, including bank, payroll, and business records, and has repeatedly denied the Bronsons access to them.  (Compl. ¶¶ 51–53.)

**C.     Lawsuits**

37.     On 21 April 2022, the Bronsons filed a lawsuit against Burnham in Wake County Superior Court (the "Prior Action") asserting claims for breach of fiduciary duty, constructive fraud, accounting, and unfair and deceptive trade

practices ("UDTP"). *See Lafayette Vill. Pub, LLC v. Burnham*, Wake Cnty. File 22-CVS-4913.

38. On 12 September 2022, this Court issued an Order and Opinion on Defendant's Motion to Dismiss, dismissing the Bronsons' individual (or direct) claims for breach of fiduciary duty and constructive fraud without prejudice and dismissing their claim for UDTP with prejudice. *See Lafayette Vill. Pub, LLC v. Burnham*, 2022 NCBC LEXIS 104 (N.C. Super. Ct. Sept. 12, 2022).

39. The Bronsons subsequently took a voluntary dismissal of all remaining claims against Burnham in the Prior Action.

40. On 2 October 2024, the Bronsons refiled this lawsuit. (ECF No. 3.) In their new Complaint, they asserted claims for monetary relief against Burnham for breach of fiduciary duty and constructive fraud—both individually and derivatively on behalf of the Pub and Executive Suites—and sought to "pierce the corporate veil" by holding Burnham personally liable for the Companies' debts. The Bronsons also brought claims for declaratory judgment, an accounting, and for judicial dissolution of the Companies.

41. On 2 December 2024, Burnham filed the present Motion to Dismiss seeking dismissal of certain claims in the action pursuant to Rules 12(b)(1) and (6) of the North Carolina Rules of Civil Procedure.

42. Ten days later, the Bronsons filed a voluntary dismissal without prejudice of their claim seeking to "pierce the corporate veil." (ECF No. 12.)

43.     On 9 January 2025, the Court entered an Order granting the Bronsons' request for leave to voluntarily dismiss their derivative claims for breach of fiduciary duty and constructive fraud that had been brought on behalf of Executive Suites ("9 January Order," ECF No. 17).[3]

44.     The Court held a hearing on the Motion on 29 January 2025 at which the Bronsons and Burnham were represented by counsel.

45.     Having been fully briefed, the Motion is now ripe for resolution.

### LEGAL STANDARD

46.     In ruling on a motion to dismiss under Rule 12(b)(6), the Court may only consider the complaint and "any exhibits attached to the complaint[,]" *Krawiec v. Manly*, 370 N.C. 602, 606 (2018), in order to determine whether "as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief can be granted under some recognized legal theory," *Forsyth Mem'l Hosp., Inc. v. Armstrong World Indus., Inc.*, 336 N.C. 438, 442 (1994) (cleaned up). The Court must view the allegations in the complaint "in the light most favorable to the non-moving party." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017) (cleaned up).

47.     "It is well established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim;

---

[3] The Court's authorization was necessary pursuant to North Carolina's Limited Liability Company Act, which provides that "[a] derivative proceeding may not be discontinued or settled without the court's approval." N.C.G.S. § 57D-8-04; *see also Morgan v. Turn-Pro Maint. Servs., LLC*, 2017 NCBC LEXIS 228, at *3 (N.C. Super. Ct. Aug. 29, 2017).

(2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. British Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

48. In his Motion to Dismiss, Burnham seeks dismissal of the Bronsons' individual claims for breach of fiduciary duty and constructive fraud, their derivative claims on behalf of the Pub, and their claims seeking an accounting of the Companies.

49. The Court will address each of Burnham's arguments in turn.

## I. Rule 12(b)(1)

50. The only portion of the Motion to Dismiss that is based on Rule 12(b)(1) concerns the Bronsons' claims for breach of fiduciary duty and constructive fraud that have been asserted derivatively on behalf of Executive Suites.[4] Burnham argues that the Court lacks subject matter jurisdiction over these claims because the Bronsons failed to comply with the requirements of N.C.G.S. § 57D-8-01(a)(2).[5]

51. As noted above, however, since the filing of the Motion to Dismiss, the Bronsons have voluntarily dismissed their derivative claims for breach of fiduciary duty and constructive fraud brought on behalf of Executive Suites.

---

[4] Burnham is not seeking dismissal under Rule 12(b)(1) of the Bronsons' claims for breach of fiduciary duty and constructive fraud that have been brought derivatively on behalf of the *Pub*.

[5] This statutory provision provides that before filing a derivative action on behalf of an LLC, the plaintiff must first make written demand upon the LLC to take suitable action. *See* N.C.G.S. § 57D-8-01(a)(2).

52.     Therefore, Burnham's Motion to Dismiss those claims pursuant to Rule 12(b)(1) is **DISMISSED as moot**.

## II.     Rule 12(b)(6)

53.     Burnham seeks dismissal under Rule 12(b)(6) of the Bronsons' *individual* claims for breach of fiduciary duty and constructive fraud based on the absence of a fiduciary relationship between the parties.  In addition, he requests that the Court dismiss, in part, the Bronsons' *derivative* claims on behalf of the Pub based on the statute of limitations.  Finally, Burnham contends that the claims for accounting should be dismissed because they merely seek a remedy rather than stating actual claims for relief.  The Court will address each of his arguments in turn.

### A.     Breach of Fiduciary Duty (Individual Claims)

54.     Given the similarity of the issues presented, the Court deems it appropriate to address the Bronsons' individual claims for breach of fiduciary duty as to both the Pub and Executive Suites together.

55.     It is well-settled that "[t]o establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of the injury to the plaintiff." *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 339 (2019) (cleaned up).  Thus, in order "to make out a claim for breach of a fiduciary duty, plaintiff[] must first allege facts that, taken as true, demonstrate that a fiduciary relationship existed between the parties." *Id.* at 339–40.

56.     At the outset, the Court deems it appropriate to provide a structural overview of the Companies, including how they are owned and managed.

57.     During the time period relevant to this lawsuit—with regard to both the Pub and Executive Suites—Burnham has never been the owner of more than a 50% interest in either company.

58.     With regard to the Pub, although Burnham has always held the largest individual ownership interest in the company, he has not held a majority ownership interest in the company since the Bronsons first acquired their ownership interests. Accordingly, he is appropriately classified as a minority member.[6]

59.     According to the Complaint, the Pub has never adopted an operating agreement, and its Articles of Organization provide that (1) the company is to be member-managed with each member having equal rights to participate in the management of the Pub; and (2) decisions by a majority of the Pub's member-managers are to be controlling.[7]

60.     With regard to Executive Suites, the Complaint alleges that Burnham owns a 50% interest and the Bronsons own a collective 50% interest. As a result, once

---

[6] Notably, the Complaint alleges that as of 2 March 2021, the Bronsons acquired a 54.07% ownership interest in the Pub. Thus, although each of them continues to be a minority member individually, they have collectively held a majority ownership interest in the Pub since that date.

[7] These allegations are consistent with the "default" provisions of North Carolina's Limited Liability Company Act. *See* N.C.G.S. § 57D-3-20; *see also Crouse v. Mineo*, 189 N.C. App. 232, 237 (2008).

again, despite holding the largest individual interest in the company, Burnham is not a majority member of Executive Suites.

61. As with the Pub, the Complaint asserts that Executive Suites lacks an operating agreement and that its Articles of Organization provide that the company is member-managed—with each member having equal rights to participate in the management of the company such that decisions by a majority of the member-managers are dispositive.

62. As a result of these characteristics of the two companies, it is clear—as to both the Pub and Executive Suites—that Kenneth Burnham, John Bronson, and Paul Bronson are each entitled to cast one vote in their capacity as member-managers of the Companies. This, in turn, means that (as the Bronsons' counsel conceded at the 29 January hearing) the Bronsons could outvote Burnham on any managerial issues relating to the Pub or Executive Suites.

63. Mindful of how the Companies are owned and operated, the Court must next determine whether the allegations in the Complaint, taken as true for purposes of Rule 12(b)(6), are sufficient to establish that Burnham owed fiduciary duties to the Bronsons with respect to either company.

64. A fiduciary relationship is generally found to exist when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (cleaned up). "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation

of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019) (cleaned up).

65. Therefore, the Court now turns to the question of whether the Bronsons have sufficiently alleged the existence of either a *de jure* or *de facto* fiduciary duty.

### 1. *De Jure* Fiduciary Duty

66. Our Supreme Court has cautioned that "[t]he list of relationships that [courts] have held to be fiduciary in their very nature is a limited one, . . . and [courts] do not add to it lightly." *CommScope Credit Union v. Butler & Burke, LLP*, 369 N.C. 48, 52 (2016) (cleaned up). "That list has, thus far, been limited to legal relationships, including attorney and client, physician and patient, spouses, business partners, and guardian and ward." *Hager*, 264 N.C. App. at 355 (cleaned up).

67. It does not, however, include the legal relationship between members of an LLC. *See Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74 (2009) (holding that a plaintiff's "status as a member of [the LLC] did not create a fiduciary relationship" with the LLC's other members).

68. Indeed, unlike traditionally recognized *de jure* fiduciary relationships—such as attorney and client, physician and patient, and guardian and ward—the relationship between members of an LLC is not premised on an imbalance of power, skill, or knowledge. It is instead based on the voluntary contractual association between parties. *See Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *17–18 (N.C. Super. Ct. June 19, 2019) (recognizing that "the members [of an LLC]

are generally free to arrange their relationship however they wish[]" and that they "may depart from statutory default rules, require supermajority votes for some or all company matters, and impose or eliminate fiduciary duties for members and managers[]" (cleaned up)); *see also Sykes*, 372 N.C. at 340 (cautioning that "general contractual relationships do not typically rise to the level of fiduciary relationships[]" (cleaned up)).

69. As this Court has previously stated:

> LLCs are creatures of contract, and the members may choose to impose fiduciary duties on one another by agreement. *See, e.g., Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017) ("The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships."); *see also* N.C.G.S. § 57D-2-30(a). Absent such an agreement, however, the general rule is that members of an LLC "do not owe a fiduciary duty to each other[.]" *Kaplan*, 196 N.C. App. at 473.

*Hartsell v. Mindpath Care Ctrs., N.C., PLLC*, 2022 NCBC LEXIS 130, at *10–11 (N.C. Super. Ct. Nov. 2, 2022).

70. Therefore, the Court is unable to conclude that the Complaint sufficiently alleges the existence of a *de jure* fiduciary relationship between Burnham and the Bronsons based on his status as a member of the Companies.

### 2. *De Facto* Fiduciary Duty

71. "The standard for finding a *de facto* fiduciary relationship is a demanding one: [o]nly when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstances of a fiduciary relationship has arisen."

*Lockerman v. S. River Elec. Membership Corp.*, 250 N.C. App. 631, 636–37 (2016) (cleaned up).

72.     In *Barefoot v. Barefoot*, 2022 NCBC LEXIS 8 (N.C. Super. Ct. Feb. 2, 2022), this Court addressed the issue of whether an LLC member possessing a minority ownership interest, who nevertheless serves as a "controlling" member, could ever owe a fiduciary duty to the other members.  If so, we stated, such a duty could only exist where the alleged controlling member possesses "actual control" of the company's affairs and "exercises . . . formidable voting and managerial power[.]" *Id.* at *28 (quoting *Corwin*, 371 N.C. at 616–17).  However, we cautioned that "[a]s a necessary prerequisite . . . to exercise actual control[,]" the controlling member's "power must be so potent that independent [member-managers] cannot freely exercise their judgment, fearing retribution." *Id.* (quoting *Corwin*, 371 N.C. at 617).

73.     Based on the facts of *Barefoot*, we found that no such *de facto* fiduciary duty had been properly alleged, in part, because "the Complaint contain[ed] few, if any, details to explain *how* [the allegedly controlling member] controlled the Company and [the majority member] and *how* he engaged in this alleged wrongdoing." *Id.* at *29–30.

74.     Here, to be sure, the Complaint contains numerous examples of specific actions Burnham allegedly took unilaterally with respect to the operation of both the Pub and Executive Suites.  However, the Complaint is devoid of any specific allegations as to why the Bronsons allowed him to do so or how he was able to exercise such dominance despite the fact that—as discussed above—the articles of

organization for both Companies provide that (1) each member-manager has an equal say in the management of the Companies (regardless of the amount of that person's ownership interest) such that (2) a majority vote of the member-managers is controlling.

75.     The Complaint alleges that as of 2 March 2021 the Pub only had three members—namely, Burnham and the two Bronsons.[8]  Moreover, the same is true for Executive Suites.  Each of those three persons possessed an equal managerial vote in both Companies.  Had the Bronsons called a managers' meeting and voted against any of Burnham's actions, they would have prevailed.  As a result, the Bronsons would have been entitled to demand that Burnham cease his improper assertions of unilateral control and to seek injunctive relief if he refused.

76.     The Complaint does not allege, however, that the Bronsons have ever called a managers' meeting or that they have ever formally voted against the acts taken by Burnham.  Nor does the Complaint explain why they never sought judicial intervention during this time period to protect their management and ownership rights.

77.     Similarly, there is no suggestion in the Complaint that the Bronsons feared any sort of "retribution" of the type contemplated in *Barefoot* if they attempted to thwart Burnham's exercise of sole control over either of the Companies.  Here, there are no allegations that Burnham in any way threatened, coerced, or intimidated

---

[8] Although Sluman and Gebauer were also members of the Pub between 2010 and March 2021, their votes as member-managers would likewise have served to prevent Burnham from exercising unilateral power over the Pub's business affairs.

the Bronsons or that they otherwise lacked the ability to exercise their independent judgment with regard to the management of the Companies.

78. The Court believes that caution should be exercised before recognizing the existence of *de facto* fiduciary duties between members of an LLC in a given case absent the express recitation of such a fiduciary relationship in the operating agreement. Members of an LLC possess virtually unlimited freedom of contract to structure the company in any way they wish. In so doing, they are free to negotiate for the creation of fiduciary rights among the members that can then be memorialized within an operating agreement. But here, for whatever reasons, the Bronsons chose to become members of two LLCs without insisting on the adoption of an operating agreement for either company.

79. As a leading treatise on North Carolina business law has observed, recognition by courts of an exception to the general rule that no fiduciary duty exists between the members of an LLC should be limited to unique circumstances. *See Robinson on North Carolina Corporation Law* § 34.03.

> If the exception is applied as standard practice, the exception could swallow the rule, which would not be consistent with the [Limited Liability Company] Act's allocation of duties expressly to managers but not to members. Broad application of that exception would also be inconsistent with the policy underlying the statute that promotes freedom of contract and the enforceability of operating agreements generally.

*Id.* (footnotes omitted); *see also Merrell v. Smith*, 2023 N.C. Super. LEXIS 266, at *23–24 (N.C. Super. Ct. Jan. 11, 2023) (noting that "[c]ourts have routinely refused to extend precedents borrowed from corporations to LLCs because minority members

have a much greater ability to negotiate for protections in the operating agreement[]" (cleaned up)).

80. In a nutshell, the Complaint merely alleges that Burnham sought to exercise more power than he actually possessed over the Companies and that the Bronsons inexplicably let him do so. Under our case law, this is simply not enough to establish a fiduciary relationship. *See Hartsell*, 2022 NCBC LEXIS 130, at *12–14 (finding allegations that the defendant "orchestrate[ed] a series of insider transactions" without giving plaintiff "input or [] the details of the[] transactions" by "den[ying] [p]laintiff access to corporate records" and "threaten[ing] her with a lawsuit" failed to establish a *de facto* fiduciary relationship because "there [was] no allegation that [p]laintiff was stripped of her authority as a member-manager" and "her status as a member gave [p]laintiff 'cards' to play[]"); *Bourgeois v. Lapelusa*, 2022 NCBC LEXIS 111, at *15 (N.C. Super. Ct. Sept. 23, 2022) (finding no *de facto* fiduciary duty where "[a]s a manager himself, [plaintiff] had some level of control" because while plaintiff "may have been mistreated by the other members, . . . it happened while he was holding—at the very least—a card or two[]"); *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *11–12 (N.C. Super. Ct. Mar. 9, 2016) (dismissing a counterclaim for breach of fiduciary duty where the defendant "held a 40% ownership interest in the LLC" and "was not powerless to protect his interests" because he "could block the [s]upermajority [v]ote necessary to take many significant corporate actions[,]" meaning that he could not "claim he was owed a fiduciary duty merely because the [p]laintiffs[] exercised their rights under the [o]perating [a]greement").

81.     Ultimately, the present case serves as yet another example of the limits on a court's willingness to protect members of an LLC from the consequences of their own decision not to insist on the adoption of an operating agreement and their failure to be vigilant in exercising their rights.

82.     Therefore, the Motion to Dismiss is **GRANTED** with prejudice as to the Bronsons' individual claims for breach of fiduciary duty against Burnham as to both the Pub and Executive Suites.[9]

### B.     Constructive Fraud (Individual Claims)

83.     The Court similarly elects to jointly consider Burnham's arguments seeking dismissal of the Bronsons' claims for constructive fraud as to both the Pub and Executive Suites.

84.     Our Supreme Court has recognized that the elements of a constructive fraud claim largely overlap with the elements of a claim for breach of fiduciary duty. *See Chisum v. Campagna*, 376 N.C. 680, 706–07 (2021).  "To survive a motion to dismiss, a cause of action for constructive fraud must allege (1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured."  *White v. Consol. Planning Inc.*, 166 N.C. App. 283, 294 (2004) (cleaned up).  "The primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is the constructive fraud requirement that the defendant benefit himself."  *Id.*

---

[9] The Court declines to dismiss these claims without prejudice.  The Bronsons have now filed two legally deficient fiduciary duty claims in their various lawsuits against Burnham, and the Court is unpersuaded that it would be appropriate to give them a third bite at the apple.

85.     In order to state a valid claim for constructive fraud, the Complaint must allege "facts and circumstances (1) which created the relation of trust and confidence, and (2) which led up to and surrounded the consummation of the transaction in which [the] defendant is alleged to have taken advantage of his position of trust to the hurt of [the] plaintiff." *Terry v. Terry*, 302 N.C. 77, 85 (1981) (cleaned up).

86.     Here, the Bronsons' Complaint fails to make sufficient allegations to support this claim. As discussed at length above, their factual assertions are not sufficient to show the existence of a fiduciary relationship between them and Burnham.

87.     Nor have they made valid alternative allegations that would be adequate to plead a claim for constructive fraud. For example, there are no allegations suggesting that the Bronsons trusted Burnham to manage the Companies because they were somehow incapable of participating in such management duties themselves and that Burnham subsequently took advantage of their misplaced trust. *Cf. Spivey v. Smith*, 2023 NCBC LEXIS 111, at *13–14 (N.C. Super. Ct. Sept. 18, 2023) (holding that allegations that the "[defendant] [was] aware that [plaintiff] ha[d] been largely incapacitated since her husband's death due to her own serious health condition" and took advantage of her "vulnerable position" and "depend[ence]" on defendant to "seize[] and exercise[] more and more control over [the company]" were sufficient to survive a motion to dismiss); *see also White*, 166 N.C. App. at 294 (finding a fiduciary relationship where the defendant falsely "assured [plaintiffs] that his

separation from [the business] was amicable and a mutual decision . . . [and] that he would continue to manage their accounts"(cleaned up)).

88.     Although the Complaint does contain a bare-bones allegation that "Defendant Burnham had a relationship of trust and confidence with the Bronson [sic]," this is merely a conclusory statement for which the Complaint contains no factual support and is therefore insufficient under North Carolina caselaw. *See, e.g.*, *Turner v. Thomas*, 369 N.C. 419, 445 (2016) (holding that "conclusory allegations provide[d] no support for the legal conclusion stated in the complaint" and were "fatally defective"); *see also Trail Creek Invs. LLC v. Warren Oil Holding Co.*, 2023 NCBC LEXIS 70, at *20 (N.C. Super. Ct. May 9, 2023) (recognizing that when ruling on a motion to dismiss pursuant to Rule 12(b)(6), "[t]he Court is not required . . . to accept as true allegations that are merely conclusory" (cleaned up)).

89.     Therefore, Burnham's Motion to Dismiss is **GRANTED** with prejudice as to the Bronsons' individual claims for constructive fraud as to both the Pub and Executive Suites. *See, e.g., Hale v. MacLeod*, 294 N.C. App. 318, 332 (2024) (noting that "[i]f no fiduciary relationship exists, then no further analysis is required for a claim of constructive fraud[]"; *McCarron v. Howell*, 2024 NCBC LEXIS 144, at *14 (N.C. Super. Ct. Nov. 19, 2024) (finding that "for the same reason that [plaintiff's] breach of fiduciary duty claim . . . fails as a matter of law, so too is his constructive fraud claim . . . legally deficient[]"); *Wheeler v. Geist*, 2024 NCBC LEXIS 108, at *8 (N.C. Super. Ct. Aug. 12, 2024) (dismissing a claim for constructive fraud where "the complaint does not adequately allege the existence of a fiduciary relationship").

## C. Breach of Fiduciary Duty and Constructive Fraud as to the Pub (Derivative Claim)

90. With regard to the Bronsons' derivative claims for breach of fiduciary duty and constructive fraud brought on behalf of the Pub, Burnham contends that the statute of limitations serves to bar these claims to the extent that they are based on acts alleged to have occurred prior to 2 March 2021.

91. As an initial matter, Burnham's argument fails to recognize the different limitations periods that apply to these two claims. Burnham asserts that the Bronsons' derivative claims for acts occurring prior to 2 March 2021 are precluded by the "three-year statute of limitations set forth in N.C.[G.S.] § 1-52(1)[.]" (Def.'s Br., at 8, ECF No. 8.) However, while claims for breach of fiduciary duty are subject to a three-year statute of limitations, claims for constructive fraud are subject to a ten-year statute of limitations. *See NationsBank of N.C. v. Parker*, 140 N.C. App. 106, 113 (2000) (cleaned up); *see also* N.C.G.S. § 1-56(a).

92. Accordingly, because Burnham's statute of limitations argument is premised on the applicability of a three-year statute of limitations, the Court need only consider his contention with regard to the derivative breach of fiduciary duty claim.

93. "Breach of fiduciary duty claims accrue upon the date when the breach is discovered and are subject to a three year statute of limitations." *Trillium Ridge Condo. Ass'n v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 501 (2014) (cleaned up).

94. The Court has carefully considered the argument raised by Burnham on this issue as well as the Bronsons' response. Upon doing so, the Court concludes that because of the fact-intensive nature of the parties' arguments—particularly as they relate to when the Bronsons had actual or constructive knowledge of Burnham's alleged wrongful acts—the Court would benefit from a more developed factual record before evaluating the applicability of the statute of limitations.

95. Therefore, the portion of the Motion to Dismiss based on the statute of limitations is **DENIED** without prejudice as to Burnham's right to reassert this argument at a later stage of the litigation.

**D. Accounting**

96. Burnham also seeks the dismissal of the Bronsons' claims for accounting with regard to the corporate and financial records of the Pub and Executive Suites.

97. Burnham contends that these claims should be dismissed on the ground that they are actually remedies rather than causes of action.

98. This Court has held that "an equitable accounting may be available when a plaintiff has asserted a valid claim for relief in equity and an accounting is necessary to compel discovery of information regarding accounts held exclusively by the defendant." *Gottfried v. Covington*, 2014 NCBC LEXIS 26, at *16 (N.C. Super. Ct. June 25, 2014) (cleaned up). "It is a remedy, not an independent cause of action, and is available only if the plaintiff first shows that he lacks an adequate remedy at law and alleges facts in the complaint to that effect." *Elhulu v. Alshalabi*, 2021 NCBC LEXIS 44, at *20 (N.C. Super. Ct. Apr. 29, 2021) (cleaned up).

99. Therefore, the Motion to Dismiss is **GRANTED** as to the Bronsons' "claims" for accounting but without prejudice to the Bronsons' ability to seek an equitable accounting as a remedy at a later stage of this litigation to the extent permitted by applicable law. *See, e.g., JT Russell & Sons, Inc. v. Russell*, 2024 NCBC LEXIS 37, at *11 (N.C. Super. Ct. Feb. 28, 2024); *F-L Legacy Owner, LLC v. Legacy at Jordan Lake Homeowners Ass'n*, 2023 NCBC LEXIS 55, at *15–16 (N.C. Super. Ct. Apr. 3, 2023).

## III. Rule 12(e)

100. Finally, as an alternative to his Motion to Dismiss, Burnham asks that the Bronsons be required to provide a more definite statement regarding certain aspects of their claims pursuant to Rule 12(e) of the North Carolina Rules of Civil Procedure.

101. Rule 12(e) states, in relevant part:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, he may move for a more definite statement before interposing his responsive pleading. The motion shall point out the defects complained of and the details desired.

N.C. R. Civ. P. 12(e).

102. "[A] statement of [a] claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought." *Sutton v. Duke*, 277 N.C. 94, 102 (1971) (cleaned up). "If the contested pleading meets the standards of North Carolina Rule of Civil Procedure 8 and the opposing party is adequately notified of the nature of the claim, a motion for a more

definite statement should be denied." *Leonard v. Ast*, 2022 NCBC LEXIS 76, at \*17–18 (N.C. Super. Ct. July 13, 2022) (cleaned up); *see also Ross v. Ross*, 33 N.C. App. 447, 454 (1977) (noting that motions for a more definite statement "[are] not favored by the courts and [are] sparingly granted because pleadings may be brief and lacking in factual detail, and because of the extensive discovery devices available to the movant" (cleaned up)).

103.   Based on its thorough review of the Complaint, the Court is not convinced that a more definite statement of the Bronsons' allegations is needed.

104.   Accordingly, in the Court's discretion, Burnham's Motion for More Definite Statement is **DENIED**.

## CONCLUSION

**THEREFORE**, **IT IS ORDERED** as follows:

1.   Burnham's Motion to Dismiss the Bronsons' individual claims for breach of fiduciary duty and constructive fraud as to both the Pub and Executive Suites is **GRANTED**, and those claims are **DISMISSED** with prejudice;

2.   Burnham's Motion to Dismiss the Bronsons' claims for accounting of the Pub and Executive Suites is **GRANTED**, and those claims are **DISMISSED** without prejudice to the Bronsons' ability to seek an equitable accounting as a remedy at a later stage of this litigation to the extent permitted by applicable law;

3.     Burnham's Motion to Dismiss as to the Bronsons' derivative claims for breach of fiduciary duty and constructive fraud on behalf of Executive Suites is **DISMISSED** as **moot**;

4.     Burnham's Motion to Dismiss, in part, the Bronsons' derivative claims for breach of fiduciary duty and constructive fraud on behalf of the Pub is **DENIED**; and

5.     Burnham's Motion for More Definite Statement is **DENIED**.

**SO ORDERED**, this the 4th day of March 2025.


/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases